COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel [Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re INTERCLOUD SYSTEMS, INC. SECURITIES LITIGATION | Master Docket No. 3:14-01982-PGS-DEA |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................3

III. ARGUMENT ................................................................................................7

    A.    Legal Standards for Class Certification ................................................7

    B.    Courts Favor Class Treatment of Securities Fraud Actions.................8

    C.    The Requirements of Rule 23(a) Are Satisfied ....................................9

        1.    The Class Is Sufficiently Numerous ...........................................9

        2.    Questions of Law and Fact Are Common to the Class.............11

        3.    Lead Plaintiff's Claims Are Typical of Those of the Class......13

        4.    Lead Plaintiff Will Fairly and Adequately Protect the
            Interests of the Class .................................................................15

    D.    The Requirements of Rule 23(b) Are Satisfied..................................18

        1.    Common Questions of Law or Fact Predominate....................19

            a.    The Class Is Entitled to a Presumption of Reliance
                Under *Basic* ................................................................21

            a.    The Class Is Also Entitled to a Presumption of
                Reliance Under *Affiliated Ute*.......................................27

        2.    A Class Action Is Superior to Other Available Methods
            for Resolving This Controversy................................................28

IV. CONCLUSION............................................................................................29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972)................................................................21, 27

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................19, 20

*Baby Neal for & by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ...............................................................11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................21, 22, 27

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989)....................................23, 24, 25, 26

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ..................................................18, 24

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013).....................................................................20

*Dodge v. Cambrex Corp.*,
No. 03-cv-4896 (PGS), 2007 U.S. Dist. LEXIS 12592
(D.N.J. Feb. 23, 2007) ...............................................................18, 19

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) .............................................................8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).....................................................................20, 22

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014).................................................................21, 22

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) .............................................................14

Page

*In re Chiang*,
    385 F.3d 256 (3d Cir. 2004) ............................................................11

*In re Constar Int'l Inc. Sec. Litig.*,
    No. 03-5020, 2008 U.S. Dist. LEXIS 16966 (E.D. Pa. Mar. 4, 2008) ................9

*In re Corel Corp. Sec. Litig.*,
    206 F.R.D. 533 (E.D. Pa. 2002)..............................................8, 11, 13

*In re DaimlerChrysler AG Sec. Litig.*,
    216 F.R.D. 291 (D. Del. 2003) ............................................................8

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623 (3d Cir. 2011) *abrogated in part by, Amgen Inc. v.*
    *Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)..........................*passim*

*In re DVI Inc. Sec. Litig.*
    249 F.R.D. 196 (E.D. Pa. 2008),.....................................................8, 28

*In re Enron Corp. Sec.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008)..............................................17

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011)......................................................18

*In re Heckmann Corp. Sec. Litig.*,
    No. 10-378-LPS-MPT, 2013 U.S. Dist. LEXIS 79345
    (D. Del. June 6, 2013).....................................................................8

*In re Herley Indus. Sec. Litig.*,
    No. 06-2596, 2009 U.S. Dist. LEXIS 91600 (E.D. Pa. Sept. 30, 2009)......*passim*

*In re Honeywell Int'l*,
    211 F.R.D. 255 (D.N.J. 2002)...........................................................9

*In re Initial Pub. Offering Sec. Litig.*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008) ..............................................23

Page

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
  No. 06-3202, 2009 U.S. Dist. LEXIS 60790
  (E.D. Pa. July 16, 2009) .........................................................................19

*In re Loewen Grp. Sec. Litig.*,
  233 F.R.D. 154 (E.D. Pa. 2005) ............................................................19

*In re Merck & Co.*,
  No. 08-2177 (DMC) (JAD), 2012 U.S. Dist. LEXIS 138080
  (D.N.J. Sept. 25, 2012) .....................................................................8, 10

*In re Merck & Co., Sec. Derivative & ERISA Litig.*,
  MDL No. 1658 (SRC), 2013 U.S. Dist. LEXIS 13511
  (D.N.J. Jan. 30, 2013) ....................................................................*passim*

*In re Rent-Way Sec. Litig.*,
  218 F.R.D. 101 (W.D. Pa. 2003) .......................................................8, 10

*In re Res. Am. Sec. Litig.*,
  202 F.R.D. 177 (E.D. Pa. 2001) ........................................................8, 24

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ..................................................................14

*In re Schering-Plough Corp.*,
  No. 8-397 (DMC) (JAD), 2012 U.S. Dist. LEXIS 138078
  (D.N.J. Sept. 25, 2012) ...................................................................*passim*

*In re Schering-Plough Corp. Sec. Litig.*,
  No. 01-0829, 2003 U.S. Dist. LEXIS 26297 (D.N.J. Oct. 9, 2003) ....................8

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007) ................................................26

*In re Vicuron Pharms. Inc. Sec. Litig.*,
  233 F.R.D. 421 (E.D. Pa. 2006) ......................................................*passim*

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..................................................................28

**Page**

*Kahan v. Rosenstiel*,
  424 F.2d 161 (3d Cir.) ...........................................................................8

*La. Mun. Police Emps. Ret. Sys. v. Dunphy*,
  No. 03-CV-4372 (DMC), 2008 U.S. Dist. LEXIS 19616
  (D.N.J. Mar. 12, 2008) ...........................................................................8

*Levine v. SkyMall, Inc.*,
  No. 99 Civ. 166, 2001 U.S. Dist. LEXIS 24705
  (D. Ariz. May 24, 2001) ........................................................................23

*Marsden v. Select Med. Corp.*,
  246 F.R.D. 480 (E.D. Pa. 2007) ........................................................8, 16

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ................................................................................20

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ...............................................................20

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ................................................................27

*Skeway v. China Nat. Gas, Inc.*,
  304 F.R.D. 467 (D. Del. 2014) ....................................................*passim*

*Sklar v. Amarin Corp. PLC*,
  No. 13-cv-06663 (FLW) (TJB), 2014 U.S. Dist. LEXIS 103051
  (D.N.J. July 29, 2014) ..........................................................................17

*Smith v. Suprema Specialties, Inc.*,
  No. 02-168 (HWH), 2007 U.S. Dist. LEXIS 30001
  (D.N.J. Apr. 23, 2007) ......................................................................9, 20

Lead Plaintiff Charles R. Gilbert, Jr. ("Lead Plaintiff" or "Plaintiff")[1] respectfully submits this memorandum of law in support of his Motion for Class Certification ("Motion"), filed herewith, and for an Order pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and Civil Local Rule 23.1:   (1) certifying this action as a class action on behalf of a class consisting of all persons or entities who, between December 3, 2013 and March 27, 2014, inclusive ("Class Period"), purchased or otherwise acquired the common stock of InterCloud Systems, Inc. ("InterCloud" or "Company") and were damaged thereby ("Class");[2] (2) appointing Charles R. Gilbert, Jr. as the Class Representative; and (3) appointing Robbins Geller as Class Counsel and Cohn Lifland as Liaison Class Counsel in this litigation.

## I.    PRELIMINARY STATEMENT

This federal securities class action arises out of Defendants' issuance of uniform misrepresentations and omissions to the investing public during the Class Period.   The Second Amended Consolidated Class Action Complaint filed on

---

[1]   By Order dated November 5, 2014 [Dkt. No. 36], the Court appointed Charles R. Gilbert, Jr. to serve as Lead Plaintiff, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel, and Cohn Lifland Pearlman Herrmann & Knopf LLP ("Cohn Lifland") as Liaison Counsel in this litigation.

[2]   Excluded from the Class are Defendants InterCloud and Mark Munro ("Munro") (collectively, "Defendants"), the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest in the Company.

February 20, 2015 [Dkt. No. 60] ("SAC") alleges that Defendants knowingly or recklessly engaged in a fraudulent scheme to artificially inflate the Company's stock price by disseminating false and misleading promotional articles disguised as independent "analyst reports" to the market touting the Company's financial condition and growth prospects.  Unbeknownst to investors, however, these articles were actually paid for and approved by InterCloud's management.  Defendants' fraudulent scheme had the intended effect of artificially inflated the value of InterCloud stock throughout the Class Period.  When the truth regarding this scheme was revealed, the price of InterCloud shares dropped precipitously, resulting in millions of dollars in investor losses.

This federal securities action easily satisfies the prerequisites for class certification under Rule 23 of the Federal Rules of Civil Procedure.  *In re Vicuron Pharms. Inc. Sec. Litig.*, 233 F.R.D. 421, 425 (E.D. Pa. 2006) ("the class action device [is] a particularly appropriate and desirable means to resolve claims based on the securities laws.").[3]  The Class members are so numerous and geographically dispersed that joinder would be impracticable.  As the proposed Class Representative, Lead Plaintiff's claims present common questions of law and fact and are typical of other Class members' claims.  Moreover, Lead Plaintiff and his selection of Lead and Liaison Counsel are more than adequate to represent the Class.  Common questions

---

[3]   Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

here predominate over any individual questions, and the class action process is superior to any other method for adjudicating these claims. Accordingly, this case should be certified as a class action, Lead Plaintiff should be appointed Class Representative, and Robbins Geller and Cohn Lifland should be appointed Class Counsel and Liaison Class Counsel, respectively.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

InterCloud offers value-added services for both corporate enterprises and service providers offering cloud and managed services, professional consulting services, and voice, data, and optical solutions to assist its customers in meeting their changing technology demands. ¶¶2, 18, 30.[4] The Company's stock traded over-the-counter until October 31, 2013, when it began trading on The NASDAQ Stock Market ("NASDAQ"), opening at a price of approximately $4 per share. ¶¶3, 32.

In order to gain market recognition and to drive up InterCloud's share price, Defendants fraudulently engaged in an aggressive promotional campaign by deliberately and deceptively commissioning numerous articles[5] enthusiastically touting InterCloud stock, without revealing that the articles were actually paid for and approved by InterCloud's senior management. ¶¶3-6, 32-34.

---

[4]   Citations to "¶__" refer to paragraphs of the SAC.

[5]   The articles were published on December 3, 2013, December 17, 2013, January 13, 2014, and February 18, 2014 (¶¶35, 49, 68, 89).

Specifically, InterCloud hired CSIR Group LLC ("CSIR"), a Manhattan-based investor relations firm, to help inflate the Company's stock price by passing off what were essentially paid InterCloud advertisements as the purportedly independent and unbiased opinions of stock analysts, thereby creating an artificial "buzz" for the Company.  ¶¶20, 33.

In furtherance of this fraudulent scheme, CSIR acted on behalf of InterCloud to commission two freelance writers – Thomas Meyer ("Meyer") and John Mylant ("Mylant") – to publish the articles touting InterCloud stock on third-party investor websites seekingalpha.com and wallstcheatsheet.com.  ¶¶33, 35, 49, 68, 89.  Through these two authors, Defendants published at least four pro-InterCloud articles.  ¶¶35, 68, 89.  The articles were materially misleading because they omitted to disclose the connection between the authors and InterCloud, including the fact that the authors were paid by Defendants to write each article, and that their contents and timing of publication were dictated, approved, and controlled by Defendants.  ¶¶42-44, 59-65, 78-86, 95-96.

Through their deceit, Defendants were able to manipulate the market to create the perception of widespread excitement for significant growth at InterCloud. Defendants' promotional campaign was so successful that InterCloud's share price soared to over $19 per share in December 2013, more than quadruple its NASDAQ opening price on October 31, 2013.  ¶33.

Beginning in March 2014, Defendants' fraudulent scheme came to light through a series of partial disclosures through which investors learned that they had been defrauded by the Company, its executive leadership, as well as InterCloud's hired investor relations firm, all of whom had conspired to prepare and disseminate these favorable reports.  ¶¶99-121.  First, on March 13, 2014, analyst Richard Pearson ("Pearson") disclosed that Meyer had attempted to recruit him to write paid promotional articles for companies that would appear as independent analysis.  ¶99. Pearson revealed that Meyer posted articles under his own name and many different aliases, and that Meyer had introduced him to Mylant.  ¶¶100-101.  Then, on March 17, 2014, journalist Roddy Boyd ("Boyd") published a report detailing InterCloud's relationship with CSIR and the Company's undisclosed financial relationships with Meyer and Mylant.  ¶¶104-105.  Next, on March 20, 2014, a law firm announced it was investigating possible securities fraud claims against InterCloud in connection with its undisclosed paid promotional scheme.  ¶107.  Finally, on March 27, 2014, the ties between InterCloud, CSIR, Mylant, and Meyer were further revealed, when Pearson published a follow-up report revealing that he had been solicited by a CSIR representative to prepare and publish positive articles for InterCloud on seekingalpha.com.  ¶¶108-110.

These revelations shocked the market, and by March 27, 2014, the Company's stock price declined from an inflated Class Period high of $19.39 to $6.60, only

slightly higher than InterCloud's price prior to publication of the first promotional article, causing millions in investor losses. The monumental rise of InterCloud's stock price as a result of the articles, and its rapid descent following these revelations, demonstrates that Defendants' failure to disclose material facts regarding their paid promotional scheme uniformly misled investors.

Even as the market was finally learning the truth regarding Defendants' deceptive course of conduct, Defendants denied the existence their fraudulent scheme through the issuance of a press release on March 28, 2014, which stated that the Company had hired a former senior federal prosecutor with the SEC to conduct an investigation into allegations against the Company and concluded that the allegations were "wholly without merit." ¶¶112-114. However, as the market definitively learned through a report published by Boyd on April 2, 2014, entitled "The Copper Archipelago:  Truth, Lies and InterCloud Systems," Defendants' denials were blatantly untrue and "CSIR recruited and paid writers to write pro-InterCloud articles." ¶¶115-117, 120-121.

The initial complaint in this action was filed on March 28, 2014, by Scott Kranzler [Dkt. No. 1], and consolidated with related securities fraud actions on June 1, 2014 [Dkt. No. 16]. On November 5, 2014, Lead Plaintiff was appointed, along with his selection of Lead Counsel and Liaison Counsel [Dkt. No. 63]. On January 9, 2015, Lead Plaintiff filed an Amended Consolidated Class Action Complaint [Dkt.

No. 44] ("AC"), and on February 20, 2015, Lead Plaintiff filed the SAC, after obtaining additional evidence supporting his claims.  Defendants moved to dismiss the SAC on March 13, 2015 [Dkt. No. 64], and on October 29, 2015, the Court issued a Memorandum and Order denying the motion to dismiss [Dkt. No. 85] ("Memorandum and Order").  Defendants filed their Answer and Affirmative Defenses on December 13, 2015 [ Dkt. No. 88].  On February 29, 2016, the Court entered a Pretrial Discovery Order [Dkt. No. 90] and the parties have now proceeded with discovery.

## III.   ARGUMENT

### A.   Legal Standards for Class Certification

Plaintiff's task at class certification is to "demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011) ("*DVI II*") *abrogated in part by, Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) (holding that establishing  materiality is not a prerequisite to class certification).  To that end, while the Court must conduct a "rigorous analysis" and "may delve beyond the pleadings for the purpose of determining whether the plaintiff has satisfied Rule 23's requirements, it may not inquire into the merits in order to determine whether the elements of each claim may be satisfied." *In re Merck & Co., Sec. Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2013 U.S. Dist. LEXIS 13511, at *32-33 (D.N.J. Jan. 30, 2013); *Skeway v.*

*China Nat. Gas, Inc.*, 304 F.R.D. 467, 472 (D. Del. 2014) (citing *Amgen*, 133 S. Ct. at 1195) (merits analysis permitted only "to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

As demonstrated below, Lead Plaintiff satisfies the requirements of Rule 23 and the proposed Class should be certified.

### B.    Courts Favor Class Treatment of Securities Fraud Actions

Courts within this Circuit have repeatedly recognized the utility and appropriateness of class actions involving violations of the federal securities laws. *In re Herley Indus. Sec. Litig.*, No. 06-2596, 2009 U.S. Dist. LEXIS 91600, at *8-9 (E.D. Pa. Sept. 30, 2009) (viewing the class action tool as "particularly appropriate and desirable means to resolve claims because the effectiveness of securities laws may depend in large measure on the application of the class action device.") (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.), ("the effectiveness of the securities laws may depend in large measure on the application of the class action device").[6]

---

[6]    *See*, *e.g. DVI II*, 639 F.3d 623; *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196 (E.D. Pa. 2008) ("*DVI I*"); *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS-MPT, 2013 U.S. Dist. LEXIS 79345 (D. Del. June 6, 2013); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291 (D. Del. 2003) *Marsden v. Select Med. Corp*., 246 F.R.D. 480 (E.D. Pa. 2007); *Vicuron*, 233 F.R.D. 421; *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101 (W.D. Pa. 2003); *In re Corel Corp. Sec. Litig.*, 206 F.R.D. 533 (E.D. Pa. 2002); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177 (E.D. Pa. 2001); *Merck*, 2013 U.S. Dist. LEXIS 13511; *In re Merck & Co*., No. 08-2177 (DMC) (JAD), 2012 U.S. Dist. LEXIS 138080 (D.N.J. Sept. 25, 2012); *La. Mun. Police Emps. Ret. Sys. v. Dunphy*, No. 03-CV-4372 (DMC),

This action is a prototypical securities class action and, thus, the Court should not depart from precedent in certifying this action as a class action.

## C.   The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) allows for class treatment where:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Constar*, 585 F.3d at 780.

### 1.   The Class Is Sufficiently Numerous

Rule 23(a)(1) requires a finding that the putative class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While no minimum number is required to maintain a class action, "the Third Circuit recognizes that a class of more than 40 generally meets the numerosity requirement."  *Herley*, 2009 U.S. Dist. LEXIS 91600, at *37.  "Determinations of whether numerosity is met must be based upon common sense."  *Skeway*, 304 F.R.D. at 473.  As such, courts within this Circuit have held that, in a securities class action, "it is not required that

---

2008 U.S. Dist. LEXIS 19616 (D.N.J. Mar. 12, 2008); *In re Schering-Plough Corp. Sec. Litig.*, No. 01-0829, 2003 U.S. Dist. LEXIS 26297 (D.N.J. Oct. 9, 2003); *In re Honeywell Int'l*, 211 F.R.D. 255 (D.N.J. 2002); *Skeway*, 304 F.R.D. 467; *In re Constar Int'l Inc. Sec. Litig.*, No. 03-5020, 2008 U.S. Dist. LEXIS 16966 (E.D. Pa. Mar. 4, 2008); *In re Schering-Plough Corp.*, No. 8-397 (DMC) (JAD), 2012 U.S. Dist. LEXIS 138078 (D.N.J. Sept. 25, 2012); *Smith v. Suprema Specialties, Inc.*, No. 02-168 (HWH), 2007 U.S. Dist. LEXIS 30001 (D.N.J. Apr. 23, 2007).

the lead plaintiff demonstrate the precise number of class members when a reasonable estimate can be inferred from the record." *Rent-Way*, 218 F.R.D. at 112; *see also Schering-Plough*, 2012 U.S. Dist. LEXIS 138078, at *11-*12 ("numerosity is obviously present where the securities issuer is a large and prominent publicly held company, and its SEC filings confirm that its shareholders number in the thousands.").

Here, the numerosity requirement is easily met.  During the Class Period, InterCloud stock was actively traded on the NASDAQ, an open and efficient market. *See* Section D.1.a. below.  Indeed, InterCloud had over ten million shares outstanding, and the average weekly trading volume was 3.85 million shares.  Reise Decl. at ¶6. Numerosity is further supported by the fact that at least 14 separate investment institutions owned InterCloud stock throughout the Class Period.  *Id.* at ¶8.  Although the precise number of Class members is unknown at this time – and can only be ascertained through discovery – "[t]his evidence clearly supports a common sense inference that membership in the proposed class of investors exceeds 40 and is so numerous as to make joinder impracticable." *Merck*, 2013 U.S. Dist. LEXIS 13511, at *36; *see also Skeway*, 304 F.R.D. at 473 (numerosity met where plaintiffs represented that 1.2 million shares of stock were traded on a weekly basis during the class period).

### 2.    Questions of Law and Fact Are Common to the Class

Commonality under Rule 23(a)(2) exists if "questions of law or fact" are common to members of the proposed class. Fed. R. Civ. P. 23(a)(2). The Third Circuit has recognized that the commonality requirement "is not a high bar: it does not require identical claims or facts among class members." *Herley*, 2009 U.S. Dist. LEXIS 91600, at *37 (quoting *In re Chiang*, 385 F.3d 256, 265 (3d Cir. 2004)). Commonality "will be satisfied if the named plaintiffs share even one common question with the grievances of each member of the prospective class." *Skeway*, 304 F.R.D. at 473 (citing *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "Commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members." *Merck*, 2013 U.S. Dist. LEXIS 13511, at *36. "Where [a]ll plaintiffs, both individual representatives and member of the class, seek to establish the defendants' fraudulent conduct under the federal securities laws, commonality is found to exist." *Schering-Plough*, 2012 U.S. Dist. LEXIS 138078, at *13; *Skeway*, 304 F.R.D. at 473 (commonality satisfied "where the matter involved alleged violations of Sections 10(b) . . . and 20(a) of the Securities Exchange Act."); *see also Corel*, 206 F.R.D. at 540 ("securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock.").

Here, Lead Plaintiff's and the Class's claims arise out of the same alleged course of conduct – Defendants' dissemination of false and misleading promotional articles disguised as "analyst reports" to the market concerning the Company's growth prospects, which were actually paid for by the Company, and issued at the direction and under the control of Defendants.  ¶1.  As set forth in the SAC, Defendants' alleged false statements and omissions were uniformly made to the Class – investors received and were deceived by the same articles.  ¶¶35-98.  Therefore, the same facts that give rise to Lead Plaintiff's claims also give rise to the claims of all members of the proposed Class.  Absent Class members necessarily would have to prove identical facts and answer identical legal questions if they pursued their individual claims.  As a result, all Class members' claims arise out of a common nucleus of facts, and all Class members were damaged by Defendants' conduct during the Class Period.  *Merck*, 2013 U.S. Dist. LEXIS 13511, at *36.

Based on the common course of fraud alleged, numerous common questions of law and fact are shared by the Class members, such as:  (1) whether Defendants violated federal securities laws; (2) whether Defendants publicly disseminated press releases and statements during the Class Period which omitted and/or misrepresented material facts; (3) whether Defendants failed to convey material facts or correct material facts previously disseminated; (4) whether Defendants participated in and pursued the fraudulent scheme or course of business complained of herein; (5)

whether Defendants acted willfully, with knowledge or severe recklessness, in omitting and/or misrepresenting material facts; (6) whether the market prices of InterCloud's securities during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of herein; and (7) whether the members of the Class have sustained damages as a result of the decline in value of InterCloud's stock when the truth was revealed and the artificial inflation came out, and if so, what is the appropriate measure of damages.  ¶176.

The existence of such common questions that will be answered with common facts renders this action a prime candidate for class certification.  *See*, *e.g.*, *Herley*, 2009 U.S. Dist. 91600, at *37-38, *Schering-Plough*, 2012 U.S. Dist. LEXIS 138078, at *13; *Skeway*, 304 F.R.D. at 473.

### 3.   Lead Plaintiff's Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that claims or defenses of the named class representative be "typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3). Typicality "does not mean that the claims of the individual plaintiffs and class representatives must be identical."  *Corel*, 206 F.R.D. at 541.  "While this element largely overlaps with the other Rule 23 requirements, a finding of typicality requires a specific inquiry into whether the named plaintiffs' claims are sufficiently similar to ensure absent class members' claims will be adequately represented."  *Herley*, 2009 U.S. Dist. LEXIS 91600, at *38.  "Factual differences will not render a claim atypical

if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Skeway*, 304 F.R.D. at 474 (quoting *Hoxworth v. Blinder, Robinson & Co*., 980 F.2d 912, 923 (3d Cir. 1992)); *In re Vicuron*, 233 F.R.D. at 426 (finding commonality and typicality, were plaintiffs' alleged injury from "a common course of fraudulent conduct . . . that artificially inflated the value of the company's stock.").

Courts in this Circuit have considered three factors when assessing typicality: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying the theory; (2) the class representative must not be subject to a defense that is both inapplicable to many class members and likely to become a major focus of the litigation; and (3) the interests and incentives of the class representative must be sufficiently aligned with those of the class. *See Skeway*, 304 F.R.D. at 474 (citing *In re Schering Plough Corp. ERISA Litig*., 589 F.3d 585, 599 (3d Cir. 2009); *Merck*, 2013 U.S. Dist. LEXIS 13511, at *40.

These factors favor class certification here. First, Lead Plaintiff's and the Class members' claims arise out of the same course of conduct and are premised on the same legal claims. *See* SAC at Count I; II. Like all Class members, Lead Plaintiff purchased InterCloud common stock on the open market via the NASDAQ at an artificially inflated price. *See* Declaration of Charles R. Gilbert, Jr. in Support of Lead

Plaintiff's Motion for Class Certification ("Gilbert Decl.")[7]  ¶¶1, 3-4; *see also* SAC ¶¶99-121, 140-161.  Furthermore, Lead Plaintiff, and the Class were damaged as the revelations of Defendants' fraudulent scheme caused the price of InterCloud shares to fall precipitously to its fair value before they perpetuated their fraudulent scheme. *See* ¶13; Gilbert Decl. at ¶4.  As such, the same facts and legal arguments supporting Lead Plaintiff's claims are shared by the rest of the Class and Lead Plaintiff is not subject to any unique defenses.  Finally, all Class members, including Lead Plaintiff, share a common interest in obtaining a recovery from Defendants for the harm they suffered from Defendants' misleading statements and omissions.  Typicality is clearly met. *See Skeway*, 304 F.R.D. at 474; *see also Herley*, 2009 U.S. Dist. LEXIS 91600, at *40-41 (typicality met where "plaintiffs and the class" were injured in connection with their purchases of Herley securities because Herley's stock price was negatively affected due to Defendants' misleading public statements).

### 4.    Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In the Third Circuit, the adequacy requirement is established with a two-prong test:  (1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation,

---

[7]    A true and correct copy of the Gilbert Decl. is attached to the Declaration of Jack Reise, Esq. in Support of Lead Plaintiff's Motion for Class Certification ("Reise Decl."), filed contemporaneously herewith, as **Exhibit 1**.

and (2) the plaintiff must not have interests antagonistic to those of the class.  *Merck*, 2013 U.S. Dist. LEXIS 13511, at *50.  Lead Plaintiff and proposed Class Counsel and Liaison Class Counsel more than amply satisfy these requirements.

First, as detailed above, Lead Plaintiff does not have any interest antagonistic to those of the Class.  Lead Plaintiff, like other Class members, was damaged as a result of Defendants' unlawful conduct during the Class Period.  Lead Plaintiff and all Class members have suffered losses due to their purchases of InterCloud common stock at artificially inflated prices.  *Id.* at ¶¶17, 28-29, 140-161; *see* Gilbert Decl. at ¶4.  As such, Lead Plaintiff will have to prove the same wrongdoing as absent Class members in order to establish Defendants' liability.  Additionally, Lead Plaintiff does not have any interests antagonistic to the class.  *Marsden*, 246 F.R.D. at 485 (finding adequacy where plaintiffs "like other members of the class, bought their shares at an allegedly-inflated price and thus did not receive the same value upon sale of the stock as they would have otherwise.").

Moreover, Lead Plaintiff understands and accepts the role and obligations of a being the class representative and has actively participated in the progress of this case.  *See* Gilbert Decl. ¶¶5-9.  Additionally, Lead Plaintiff has experience serving as a class representative as he was appointed and served as a class representative in another securities fraud action that resulted in a successful recovery for the Class.  *Id.*

"In short, [Lead Plaintiff] is a credible lead plaintiff whose interests in this litigation align with those of the class." *Herley*, 2009 U.S. Dist. LEXIS 91600, at *43; *see also Vicuron*, 233 F.R.D. at 428. *Sklar v. Amarin Corp. PLC*, No. 13-cv-06663 (FLW) (TJB), 2014 U.S. Dist. LEXIS 103051, at *20 (D.N.J. July 29, 2014) ("the adequacy requirement is satisfied when there is no conflict between the proposed lead plaintiff and members of the class, and the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.").

Second, Lead and Liaison Counsel are fully adequate to represent the interests of the Class. As demonstrated by their respective résumés,[8] Robbins Geller and Cohn Lifland are comprised of highly competent lawyers who possess substantial experience in litigating class actions on behalf of aggrieved investors and consumers and are adequately prepared to continue to prosecute this action. Lead Counsel and Liaison Counsel have successfully prosecuted numerous securities fraud class actions in this District and across the country. *See, e.g., In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 790 (S.D. Tex. 2008) ("This Court considers [Robbins Geller] 'a lion' at the securities bar on the national level. Lead Counsel's outstanding reputation, experience, and success in securities litigation nationwide were a major reason why

---

[8]   *See* the firm résumés of Robbins Geller and Cohn Lifland, attached to the Reise Decl. as **Exhibits 2** and **3**, respectively.

- 17 -

the Regents selected the firm").[9]  Thus, the adequacy of Lead Plaintiff's counsel is

established here.  *Skeway*, 304 F.R.D. at 475 (finding adequacy of counsel where

"Lead Counsel and Liaison Counsel are experienced in both complex class litigation

and securities actions.").  Fed. R. Civ. P. 23(a)(4).[10]

### D.    The Requirements of Rule 23(b) Are Satisfied

In addition to meeting the requirements of Rule 23(a), a class action must

satisfy one of the three conditions imposed by Rule 23(b).  Here, Lead Plaintiff has

satisfied the requirements of Rule 23(b)(3), which authorizes class certification where:

(1) the "questions of law or fact common to class members predominate over any

questions affecting only individual members"; and (2) "a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(3); *see also DVI II*, 639 F.3d at 630.

---

[9]    *See also In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D.
382, 392 (D. Mass. 2011) (finding that Robbins Geller has "substantial experience
with securities class action litigation" and was "adequate to serve as class counsel");
*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100
(S.D.N.Y. 2015) ("Courts within this Circuit have repeatedly found Robbins Geller to
be adequate and well-qualified for the purpose of litigating class action lawsuits.");
*Vicuron*, 233 F.R.D. at 428 (finding Robbins Geller (formerly Lerach Coughlin) to be
"sufficiently experienced and qualified to conduct this securities fraud class action.");
*Dodge v. Cambrex Corp.*, No. 03-cv-4896 (PGS), 2007 U.S. Dist. LEXIS 12592, at
*25-26 (D.N.J. Feb. 23, 2007) (certifying a class and appointing Robbins Geller
(formerly Lerach Coughlin) as class counsel and Cohn Lifland as liaison counsel).

[10]   For these reasons, the requirements of Rule 23(g) have also been met.

## 1.    Common Questions of Law or Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  To this end, the Rule requires that common questions of law and fact predominate over questions affecting individual class members.  "Ultimately, Rule 23(b)(3) creates a balancing test, requiring courts to weigh the merits of the class action device against the merits of individual adjudications." *Herley*, 2009 U.S. Dist. LEXIS 91600, at *45.  "Plaintiffs need not have identical claims to be certified as a class, but if the facts present individual questions these must be outweighed by common ones." *In re Loewen Grp. Sec. Litig.*, 233 F.R.D. 154, 167 (E.D. Pa. 2005); *Dodge*, 2007 U.S. Dist. LEXIS 12592, at *25 ("[C]ommon questions need not be identical.").  However, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Herley*, 2009 U.S. Dist. LEXIS 91600, at *44.

Where a complaint alleges a "common course of conduct on the part of the defendant" of misrepresentations, omissions, and other wrongdoings that affect all members of the class in the same manner, common questions of both law and fact predominate. *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 U.S. Dist. LEXIS 60790, at *17 (E.D. Pa. July 16, 2009).  Therefore, in assessing whether common questions predominate, this Court's inquiry should be

primarily directed toward the issue of Defendants' liability, not damages.  *Suprema*, 2007 U.S. Dist. LEXIS 30001, at *31 ("To be sure, the various members of the proposed plaintiff class could present divergent individual issues of damages, loss causation, or reliance.  But divergence on these issues in not an impediment to class certification so long as predominance exists as to liability.").[11]  Both the United States Supreme Court and the Third Circuit have found "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods.*, 521 U.S. at 625; *DVI II*, 639 F.3d at 630.

Here, the SAC alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.[12]  As such, Defendants' liability predominantly turns on issues common to the Class, *i.e.*, whether Defendants made materially false and misleading statements and omissions with the requisite scienter through a uniform course of conduct, to the detriment of all Class members.

---

[11]  "Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal."  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374-75 (3d Cir., 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1437 (2013) (Ginsburg, J. & Breyer, J., dissenting).

[12]  The elements comprising a private securities fraud class action include:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) ("*Halliburton I*") (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)).

Common questions also predominate with respect to the reliance element.  In securities fraud cases, there are two legal doctrines under which reliance can be presumed on a class-wide basis in order to meet the predominance requirement:  (1) the presumption of reliance invoked by the fraud-on-the-market theory established in *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988); and (2) the presumption of reliance that arises based on a defendant's "failure to disclose" material information under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972).  Both apply here.

### a.    The Class Is Entitled to a Presumption of Reliance Under *Basic*

Lead Plaintiff has made a showing sufficient to invoke a presumption of reliance under the fraud-on-the-market theory established by the Supreme Court in *Basic*, 485 U.S. at 227.  The fraud-on-the-market theory holds that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("*Halliburton II*").  Thus, the "investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price - the belief that it reflects all public, material information.  As a result, whenever the investor buys or sells stock at the market price, his "reliance on any public

material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Id.* (quoting *Basic*, 485 U.S. 246-47).[13]

In order to invoke the presumption of reliance under this theory, a plaintiff must demonstrate:  (1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed.  *Halliburton II*, 134 S. Ct. at 2408.

Lead Plaintiff satisfies each of *Basic*'s requirements.  First, the Court has already concluded that the misrepresentations at issue here were publicly disseminated to the market through the articles. *See* Memorandum and Order at 1.  Moreover, the Supreme Court has concluded that materiality "should be left to the merits stage, since it does not bear on the predominance requirement of Rule 23(b)(3)" because it "is an objective issue susceptible to common, classwide proof." *Halliburton II*, 134 S. Ct. at 2416.  Finally, it is indisputable that Lead Plaintiff purchased InterCloud common stock after misrepresentations were made but before the truth was revealed. *Basic*, 485 U.S. at 248 n.27; Gilbert Decl. at ¶1.

---

[13]  In *Halliburton I*, the Supreme Court unequivocally held that plaintiffs are not required to prove loss causation at the class certification stage in order to invoke the presumption of reliance under *Basic*.  563 U.S. at 813-14.  ("The Court of Appeals erred by requiring [plaintiff] to show loss causation as a condition of obtaining class certification."); *DVI II*, 639 F.3d 623 at 637.

The final factor to give rise to the fraud-on-the-market presumption of reliance is market efficiency.  Market efficiency is established whereas, like here, a security is traded on a national stock exchange that is "open and developed" and thus "well-suited for application of the fraud on the market theory."  *Merck*, 2013 U.S. Dist. LEXIS 13511, at *59.  Indeed, numerous courts, including the Third Circuit, have concluded that a stock's inclusion on a national stock exchange is a ***strong*** indicator of market efficiency.  *See DVI II*, 639 F.3d at 634 ("the listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency.").  *See also In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 297 n.133 (S.D.N.Y. 2008) ("[T]he federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency"); *Levine v. SkyMall, Inc.*, No. 99 Civ. 166, 2001 U.S. Dist. LEXIS 24705, at *13 (D. Ariz. May 24, 2001) ("the fact that SkyMall stock is traded on the NASDAQ stock market's National Market System also contributes to finding that the market is efficient.").  Here, InterCloud traded on the NASDAQ throughout the Class Period.

In addition, an analysis of the widely-followed factors enumerated in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), further supports a finding of market efficiency.  The *Cammer* factors include:  (1) the stock's average weekly trading weekly volume; (2) whether securities analysts report on the stock; (3) the extent to

which market makers traded the stock; (4) the company's eligibility to file SEC registration Form S-3; and (5) the causal relationship between material disclosures and responses in the stock price. *DVI II*, 639 F.3d at 633 n.14; *Schering-Plough*, 2012 U.S. Dist. LEXIS 138078, at \*17. While none of the factors is dispositive of the market efficiency analysis,[14] the Third Circuit has found them instructive. *See DVI II*, 639 F.3d at 634 n.16.

As an initial matter, as the Third Circuit has held, "because an efficient market is one in which information important to reasonable investors . . . is immediately incorporated into stock prices, . . . the cause-and-effect relationship between a company's material disclosures and the security price is normally ***the most important factor in an efficiency analysis***." *DVI II*, 639 F.3d at 634 (citing *Cammer*, 711 F. Supp. at 1287)).

Here, the price of InterCloud stock reacted to new, Company-specific information during the Class Period, supporting a finding of market efficiency. As set forth in the SAC, InterCloud's stock price ***increased*** after the publication of each of the commissioned articles. ¶¶41, 57, 76; s*ee also* Reise Decl. at ¶11. Additionally,

---

[14] *See In re Res. Am.*, 202 F.R.D. at 188 (noting that while courts typically "look at a number of factors in determining whether or not a market is efficient . . . there is no definitive list"); *Carpenters Pension Trust Fund*, 310 F.R.D. at 83 (The Second Circuit has not required the use of the *Cammer* factors "or held that any one of them is dispositive. A substantially similar approach has been taken by the Courts of Appeals for the First, Third, Fourth, Fifth, and Eleventh Circuits.").

the Company's stock price precipitously declined as the truth regarding the authorship of the articles became known. *Id.* at ¶¶140-161. The dramatic rise and fall of InterCloud stock in reaction to public news about the Company readily establishes market efficiency. *DVI II*, 639 F.3d at 634.

Other *Cammer* factors bolster the finding of market efficiency here. For example, the average weekly trading volume of InterCloud stock also supports market efficiency here. During the Class Period, InterCloud common stock experienced an average weekly trading volume of approximately 3.85 million shares, with an average weekly turnover of stock of 35.8% of shares outstanding. *See* Reise Decl. ¶6. According to *Cammer*, weekly volume over 1% of total shares outstanding would warrant a "substantial presumption" of efficiency and volume over 2% a "strong presumption." *Cammer*, 711 F. Supp. at 1286 (citing Bromberg & Lowenfels, 4 Securities Fraud and Commodities Fraud, §8.6 (Aug. 1988). The large weekly trading volume of InterCloud stock, well over the threshold justifying a "strong presumption," demonstrates that InterCloud stock traded in an efficient market. *Id.*

In addition, the presence of market makers and arbitrageurs for InterCloud stock further demonstrates market efficiency. *Id.* at 1286-87. "The existence of market makers and arbitrageurs . . . ensure[s] completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Id.* Sufficient market

makers, institutional investors, and arbitrageurs existed in InterCloud's common stock during the Class period. Here, there were at least 62 market makers for InterCloud's common stock. *See* Reise Decl. ¶7.

Finally, the fact that InterCloud was "[a]t all times . . . authorized to file S-3 registration statements, and regularly filed periodic public reports with the SEC . . . [also] weighs heavily in favor of a finding of market efficiency." *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1339 (N.D. Ga. 2007). The current requirements for filing a Form S-3 registration statement are that a company be organized and operating under the laws of the United States or its territories, has filed reports under the Exchange Act for twelve calendar months, has suffered no default of its obligations, and has an aggregate market value of common equity held by non-affiliates of $75 million or more. *See* SEC Form 1379, "Form S-3 Registration Statement Under the Securities Act of 1933, General Instructions," as revised August 2001. Here, InterCloud was eligible to file Form S-3 Registration Statements during the Class Period. *See* Reise Decl. ¶9. Thus, InterCloud's eligibility to file a Form S-3 further supports a finding of market efficiency.

InterCloud's inclusion on the NASDAQ coupled with satisfaction of the *Cammer* factors as detailed above, indicates that the market for InterCloud common stock was efficient during the Class Period and gives rise to a presumption of reliance

under the fraud-on-the-market theory sufficient to demonstrate predominance under Rule 23(b)(3).

### a.    The Class Is Also Entitled to a Presumption of Reliance Under *Affiliated Ute*

Under *Affiliated Ute*, for Section 10(b) and Rule 10b-5 claims "involving primarily a failure to disclose" by persons with a duty to disclose, "positive proof of reliance is not a prerequisite to recovery."  *Skeway*, 304 F.R.D. at 475 (quoting *Affiliated Ute*, 406 U.S. at 153).  Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."  *Id*. at 153-54 (quoting *Affiliated Ute*, 406 U.S. at 153-54).  Here, Defendants' statements during the during the Class Period omitted material information, specifically, that the articles were promotional advertisements commissioned, controlled, and paid for by Defendants.  ¶¶4-6, 26, 29, 32-34.  The materiality of the omitted information is exemplified by the market's reaction to the revelation of the truth.  *See* ¶13.  *See also*, *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) ("[T]he materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock.").  Thus, there is also a presumption of reliance under *Affiliated Ute*.

Because Lead Plaintiff and the Class are entitled to a presumption of reliance under both *Basic* and *Affiliated Ute*, reliance presents yet another common issue that

predominates over any potentially individualized issue.  Accordingly, Rule 23(b)(3)'s

predominance requirement is satisfied.

### 2.  A Class Action Is Superior to Other Available Methods for Resolving This Controversy

Rule 23(b)(3) also requires the Court to determine that "a class action is

superior to other available methods for fairly and efficiently adjudicating of the

controversy." Fed. R. Civ. P. 23(b)(3).  As detailed above, this Circuit recognizes that

class actions are the preferred mechanism for adjudicating securities fraud cases.  *DVI*

*I*, 249 F.R.D. at 200; *Herley*, 2009 U.S. Dist. LEXIS 91600, at *8-9.  To determine the

issue of "superiority," Rule 23(b)(3) enumerates the following factors for the court to

consider:

> (A) [T]he class members' interest in individually controlling the
> prosecution . . . of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already begun by . . . class
> members; (C) the desirability . . . of concentrating the litigation of the
> claims in a particular forum; and (D) the likely difficulties in managing a
> class action.

Fed. R. Civ. P. 23(b)(3).  Each of these four factors is satisfied here.

The interest of Class members in individually controlling the prosecution of

separate actions is minimal, particularly because the costs and expenses of such

individual actions would be prohibitive when weighed against potential individual

recoveries.  *Vicuron*, 233 F.R.D. at 428-29; *In re Warfarin Sodium Antitrust Litig.*,

391 F.3d 516, 534 (3d Cir. 2004) ("a class action facilitates spreading of the litigation costs among the numerous injured parties.").

There are currently no other class action lawsuits raising the same issues against the same Defendants.   However, the potential burden on courts to adjudicate potentially thousands of separate actions arising from the same facts would be significant. *Vicuron*, 233 F.R.D. at 429.  And, "given the amount of Class members, individually litigating these matters could certainly raise the possibility of conflicting outcomes." *Schering-Plough*, 2012 U.S. Dist. LEXIS 138078, at *24.

Finally, as to the difficulties likely to be encountered in the management of a class action, Lead Counsel and Liaison Counsel have substantial experience in the field of securities class action litigation in this and other districts.  As such, there is no reason to believe that counsel will experience any unusual difficulty in the management of this litigation. *Herley*, 2009 U.S. Dist. LEXIS 91600, at *47 ("[t]his case is, at its core, a straightforward securities class action that does not raise any concerns about management difficulties.").   Lead Plaintiff has clearly met the superiority requirement of Rule 23(b).

## IV.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (1) certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (2) appoint Lead Plaintiff as the Class Representative; (3) appoint Robbins Geller as

Class Counsel and Cohn Lifland as Liaison Class Counsel; and (4) grant such further

relief as the Court deems just and proper.

DATED:  June 1, 2016                    COHN LIFLAND PEARLMAN
                                         HERRMANN & KNOPF LLP


                                         */s/ Peter S. Pearlman*
                                     _____
                                         PETER S. PEARLMAN

                                     Park 80 West – Plaza One
                                     250 Pehle Avenue, Suite 401
                                     Saddle Brook, NJ  07663
                                     Telephone:  201/845-9600
                                     201/845-9423 (fax)
                                     psp@njlawfirm.com

                                     *Liaison Counsel*

                                     ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     JACK REISE
                                     STEPHEN R. ASTLEY
                                     120 East Palmetto Park Road, Suite 500
                                     Boca Raton, FL  33432
                                     Telephone:  561/750-3000
                                     561/750-3364 (fax)
                                     jreise@rgrdlaw.com
                                     sastley@rgrdlaw.com

                                     *Lead Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 1, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

*s/ Peter S. Pearlman*
_____
PETER S. PEARLMAN
