# EXHIBIT 1

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Liaison Counsel [Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re INTERCLOUD SYSTEMS, INC. SECURITIES LITIGATION | ) ) ) | Master Docket No.   3:14-01982-PGS-DEA |
| ——————————————— | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
|    ALL ACTIONS. | ) ) ) | DECLARATION OF LEAD PLAINTIFF CHARLES R. GILBERT, JR. IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| ——————————————— | ) | |

I, Charles R. Gilbert, Jr., provide this declaration in support of the Motion for Class Certification (the "Motion"). The Motion seeks to certify a class of purchasers of InterCloud Systems, Inc. ("InterCloud") common stock between December 3, 2013 and March 27, 2014, inclusive, and to name me as class representative. The following facts are true and correct to my own knowledge, and if called upon to testify, I could and would testify competently thereto.

1.      I currently live in Gaithersburg, Maryland. Between November 20, 2013 and March 7, 2014, I purchased shares of InterCloud common stock, as set forth in my certification previously filed with the Court. *See* Certification of Named Plaintiff Pursuant to Federal Securities Laws, a true and correct copy of which is attached hereto as Exhibit A; *see also* Fidelity Investments statement showing purchases and sales of InterCloud stock, a true and correct copy of which is attached hereto as Exhibit B.

2.      On March 28, 2014, an initial complaint was filed in this matter alleging violations of the federal securities laws. After becoming aware that several firms were filing actions against InterCloud, I reached out to Jack Reise at Robbins Geller Rudman & Dowd LLP ("Robbins Geller") via email to express my interest in pursuing an action against defendants and in seeking lead plaintiff appointment to represent a class of investors. On May 27, 2015, I filed a motion for consolidation of related actions and asked the Court to appoint me as Lead Plaintiff in this litigation, and my selection of counsel, Robbins Geller and Cohn Lifland Pearlman Herrmann &

Knopf LLP ("Cohn Lifland"), as Lead Counsel and Liaison Counsel, respectively [Dkt. 12-1]. The Court granted this motion on November 5, 2014 [Dkt. No. 36].

3.      In purchasing InterCloud stock during the Class Period, I considered its price and the available public information about the company, and I anticipated that it would appreciate over time.

4.      As a result of the fraud detailed and alleged in the Amended Consolidated Class Action Complaint filed on January 9, 2015 ("Amended Complaint"), I suffered significant losses from my Class Period purchases of InterCloud common stock at artificially inflated prices.

5.      I have been actively involved in the litigation of this action. I have had many communications with my attorneys about this case in person, and via correspondence, emails and telephone conferences, including discussions regarding litigation strategy and my role as Lead Plaintiff.

6.      My attorneys have kept me abreast of all major developments in this matter, including the filing of the Amended Complaint, defendants' motion to dismiss, the opposition to defendants' motion to dismiss and the Court's order denying defendants' motion, as well as relevant status conferences and hearings. I have received and reviewed all relevant filings in the action.

7.      I have also been actively involved in the discovery process. I have sent documents to my attorneys, including the trading records associated with my

InterCloud stock.   I worked with my attorneys to respond to defendants' requests for production.  I am also prepared to give a deposition, if so requested by defendants.

8.      I understand what my role would be as a class representative. I was appointed and served as a class representative in another securities fraud action that resulted in a successful recovery for the class. *See In re Red Hat, Inc. Secs. Litig.*, 261 F.R.D. 83, 95 (E.D.N.C. 2009), at true and correct copy of which is attached hereto as Exhibit C. I am willing and able to represent the class, and I am prepared to attend all significant court hearings and to participate in settlement negotiations. I will also attend the trial in this action, and will testify, if called.

9.      I will continue to take an active role and monitor the litigation for the best interest of the entire class.  Moreover, I will vigorously pursue the claims against the defendants to obtain the maximum possible recovery on behalf of the class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this _____3/_____ day of May, 2016, at _____11:20_____ .


_____
CHARLES R. GILBERT, JR.

- 3 -

# EXHIBIT A

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

CHARLES R. GILBERT, JR. ("Plaintiff") declares:

1.  Plaintiff has reviewed a complaint and authorized its filing.

2.  Plaintiff did not acquire the security that is the subject of this action at the
direction of plaintiff's counsel or in order to participate in this private action or any other
litigation under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of the class,
including providing testimony at deposition and trial, if necessary.

4.  Plaintiff has made the following transaction(s) during the Class Period in
the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.  Plaintiff has not sought to serve or served as a representative party in a
class action that was filed under the federal securities laws within the three-year period
prior to the date of this Certification except as detailed below:

6.  The Plaintiff will not accept any payment for serving as a representative
party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except
such reasonable costs and expenses (including lost wages) directly relating to the
representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed
this ___19___ day of ___MAY___, 2014.

_____
CHARLES R. GILBERT, JR.

# EXHIBIT B



**Investment Report**

November 1, 2013 - November 30, 2013

FIDELITY
PREMIUM SERVICES℠

## Fidelity Account ℠ ▬▬▬▬   CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

### Core Account   - Fidelity Municipal Money Market

| Description | Amount | Balance | Description | Amount | Balance |
|---|---|---|---|---|---|
| Beginning | | ▬▬▬ | Core account income | | |
| *Investment Activity* | | | Income | ▬▬▬ | |
| Securities bought | ▬▬▬ | | Subtotal of Investment Activity | ▬▬▬ | |
| Securities sold | ▬▬▬ | | **Ending** | | ▬▬▬ |

### Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Cost Basis of Close | Transaction Amount |
|---|---|---|---|---|---|---|
| 11/01 | ▬▬▬ | ▬▬▬ | | | | $1.06 |
| 11/13 | ▬▬▬ | You sold ▬▬▬ Transaction cost: ▬▬▬ *Short-term gain: $1,221.22* | ▬▬▬ | ▬▬▬ | ▬▬▬ | ▬▬▬ |
| 11/18 | ▬▬▬ | You ▬▬▬ Transaction cost: -$13.78 ▬▬▬ | ▬▬▬ | $5.75000 | ▬▬▬ | ▬▬▬ |
| 11/25 | INTERCLOUD SYS INC COM NEW | You bought | 40.000 | 12.69500 | | -507.80 |
| 11/25 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 1,290.000 | 12.65000 | | -16,326.45 |
| 11/25 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 2,960.000 | 12.70000 | | -37,599.95 |
| 11/25 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 3,000.000 | 12.90000 | | -38,707.95 |
| 11/25 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 3,000.000 | 13.40000 | | -40,207.95 |
| 11/25 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 3,000.000 | 13.40000 | | -40,207.95 |
| 11/25 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$8.66 *Short-term gain: $1,993.39* | -3,000.000 | 13.57000 | 38,707.95f | 40,701.34 |
| 11/25 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$8.66 | -3,000.000 | 13.55000 | 38,106.20f | 40,641.34 |



**Investment Report**

November 1, 2013 - November 30, 2013

FIDELITY
PREMIUM SERVICES℠

**Fidelity Account** ℠ ▓▓▓▓▓   CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD
**Transaction Details**
*Investment Activity*

| Settlement Date | Security | Description | Quantity | Price per Unit | Cost Basis of Close | Transaction Amount |
|---|---|---|---|---|---|---|
| | | *Short-term gain: $2,535.14* | | | | |
| 11/25 | INTERCLOUD SYS INC COM NEW | You sold | -1,290.000 | 13.55000 | 16,328.00f | 17,471.24 |
| | | Transaction cost: -$8.26 | | | | |
| | | *Short-term gain: $1,143.24* | | | | |
| 11/25 | ▓▓▓▓▓▓▓ | Dividend received | | | | ▓▓▓▓▓ |
| 11/26 | INTERCLOUD SYS INC COM NEW | You bought | 3,000.000 | 12.90000 | | -38,707.95 |
| | | Transaction cost: -$7.95 | | | | |
| 11/26 | INTERCLOUD SYS INC COM NEW | You sold | -900.000 | 13.20000 | 12,062.39f | 11,871.84 |
| | | Transaction cost: -$8.16 | | | | |
| | | *Short-term loss: $190.55* | | | | |
| | | *Short-term disallowed loss: $190.55* | | | | |
| | | *Wash sale of 11/21/13: $190.55* | | | | |
| 11/27 | ▓▓▓▓▓▓▓ INC COM USD0.000006 CL A | ▓▓▓▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ |
| | | ▓▓▓▓▓▓▓ | | | | |
| | | Long-term gain | | | | |
| 11/27 | FIDELITY MUNICIPAL MONEY MARKET | | | | | 12.32 |
| 11/27 | INTERCLOUD SYS INC COM NEW | You sold | -6,000.000 | 13.45000 | 79,855.44f | 80,690.64 |
| | | Transaction cost: -$9.36 | | | | |
| | | *Short-term gain: $1,637.37* | | | | |
| | | *Short-term loss: $802.17* | | | | |
| | | *Short-term disallowed loss: $802.17* | | | | |
| | | *Wash sale of 11/22/13: $802.17* | | | | |
| 11/27 | INTERCLOUD SYS INC COM NEW | You sold | -2,100.000 | 13.05000 | 28,145.56f | 27,396.57 |
| | | Transaction cost: -$8.43 | | | | |
| | | *Short-term loss: $748.99* | | | | |
| | | *Short-term disallowed loss: $748.99* | | | | |
| | | *Wash sale of 11/22/13: $748.99* | | | | |
| 11/29 | FIDELITY MUNICIPAL MONEY MARKET | Dividend received | | | | 1.55 |
| 11/29 | INTERCLOUD SYS INC COM NEW | You bought | 3,000.000 | 12.50000 | | -37,507.95 |
| | | Transaction cost: -$7.95 | | | | |

P.2

Apr 21 16 12:17a



**FIDELITY**
**PREMIUM SERVICES**℠

**Investment Report**

November 1, 2013 - November 30, 2013

**Fidelity Account** ℠ ▄▄▄▄▄    CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

**Transaction Details**

**Investment Activity**

| Settlement Date | Security | Description | Quantity | Price per Unit | Cost Basis of Close | Transaction Amount |
|---|---|---|---|---|---|---|
| 11/29 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 4,000.000 | 12.20000 | | -48,807.95 |
| 11/29 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 7,000.000 | 9.75000 | | -68,257.95 |

*f - FIFO (First-In, First-Out)*
*Cost basis and gain/loss information is provided as a service to our customers and is based on standards for filing US Federal Tax Returns as determined by Fidelity. This information is not intended to address tax law or reporting requirements applicable in your country of tax residence.*

**Trades Pending Settlement on November 30, 2013**

| Trade Date | Settlement Date | Security | Description | Quantity | Price per Unit | Cost Basis of Close | Settlement Amount |
|---|---|---|---|---|---|---|---|
| 11/ 26 | 12/ 02 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 3,000.000 | $8.65000 | | -$25,957.95 |
| 11/ 27 | 12/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 2,000.000 | 8.02000 | | -16,047.95 |
| 11/ 29 | 12/ 04 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 2,000.000 | 7.16000 | | -14,327.95 |
| 11/ 29 | 12/ 04 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -1,500.000 | 7.29000 | $10,745.96f | 10,926.85 |
| | | | *Short-term gain: $180.89* | | | | |
| 11/ 29 | 12/ 04 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -500.000 | 7.29000 | 3,581.99f | 3,644.93 |
| | | | *Short-term gain: $62.94* | | | | |
| 11/ 29 | 12/ 04 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -500.000 | 8.27000 | 4,011.99f | 4,126.97 |
| | | | *Short-term gain: $114.98* | | | | |
| 11/ 29 | 12/ 04 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -300.000 | 8.27000 | 2,407.19f | 2,480.95 |
| | | | *Short-term gain: $73.76* | | | | |
| 11/ 29 | 12/ 04 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -200.000 | 8.27000 | 1,604.80f | 1,653.97 |
| | | | *Short-term gain: $49.17* | | | | |
| 11/ 29 | 12/ 04 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -1,000.000 | 8.27000 | 8,023.97f | 8,269.85 |
| | | | *Short-term gain: $245.88* | | | | |

*f - FIFO (First-In, First-Out)*



**Investment I**

December 1, 2013 -

AND TERESA L KENDRICK - WITH RIGHTS OF SU

| | Quantity | Price per Unit | |
|---|---|---|---|
| | -50.000 | 10.34000 | |
| .01 | | | |
| 1 | | | |
| | 5,000.000 | 10.25000 | |
| .95 | | | |
| | 5,000.000 | 10.55000 | |
| .95 | | | |
| | 5,000.000 | 10.95000 | |
| .95 | | | |
| | -7,000.000 | 9.90000 | |
| .16 | | | |
| 32.89 | | | |
| | -2,900.000 | 10.34000 | |
| .48 | | | |
| 7.91 | | | |
| | -3,000.000 | 9.00000 | |
| .42 | | | |
| 33.63 | | | |
| | -600.000 | 10.34000 | |
| .11 | | | |
| 94 | | | |
| | -500.000 | 10.34000 | |
| .09 | | | |
| 12 | | | |
| | -300.000 | 10.34000 | |
| .06 | | | |
| 46 | | | |
| | -200.000 | 10.34000 | |
| .04 | | | |
| 64 | | | |
| | -150.000 | 10.34000 | |
| .03 | | | |
| 00 | | | |

**Fidelity INVESTMENTS**

**2013 Investment Report**

FIDELITY
PREMIUM SERVICES℠

January 1, 2013 - December 31, 2013

---

**Fidelity SEP-IRA** ▬▬▬▬    CHARLES R GILBERT JR - SEP-IRA - FIDELITY MANAGEMENT TRUST CO - CUSTODIAN

---

## Transaction Details of Core Account

**Core Account**   - Fidelity Cash Reserves

| Description | Amount | Balance | Description | Amount | Balance |
|---|---|---|---|---|---|
| Beginning | | ▬▬▬ | Income | ▬▬▬▬92 | |
| *Investment Activity* | | | Subtotal of Investment Activity | $▬▬▬.78 | |
| Securities sold | ▬▬2.73 | | **Ending** | | ▬▬▬▬ |
| Core account income | ▬▬▬ | | | | |

---

### Investment Activity

---

### Trades Pending Settlement on December 31, 2013

| Trade Date | Settlement Date | Security | Description | Quantity | Price per Unit | Settlement Amount |
|---|---|---|---|---|---|---|
| 12/ 31 | 1/ 06 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 5,000.000 | $18.50000 | -$92,507.95 |
| 12/ 31 | 1/ 06 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 3,000.000 | 18.30000 | -54,907.95 |
| 12/ 31 | 1/ 06 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -5,000.000 | 18.60000 | 92,990.37 |

**Fidelity**
INVESTMENTS

**2013 Investment Report**

January 1, 2013 - December 31, 2013

FIDELITY
PREMIUM SERVICES℠

P. 5

**Fidelity Account** ℠  [redacted]   CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

## Trades Pending Settlement on December 31, 2013

*All gains or losses from security transactions should be reported by trade date to comply with IRS regulations. The proceeds reported on your Investment Reports are based on settlement date and, therefore, may not match the proceeds listed on your form 1099-B. The pending trades listed below will appear on your 2013 Tax Reporting Statement (mailed under separate cover).*

| Trade Date | Settlement Date | Security | Description | Quantity | Price per Unit | Settlement Amount |
|---|---|---|---|---|---|---|
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 10,000.000 | 17.40000 | -174,007.95 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 2,000.000 | 16.70000 | -33,407.95 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -9,468.000 | 17.00000 | 160,945.24 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -300.000 | 17.00000 | 5,099.91 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -232.000 | 17.00000 | 3,943.93 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -12,000.000 | 17.05000 | 204,588.48 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -12,000.000 | 17.50000 | 209,988.39 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD ) | Sold | -8,935.000 | 17.65000 | 157,692.05 |
| 12/ 31 | 1/ 06 | [redacted] | Sold | [redacted] | [redacted] | [redacted] |
| 12/ 31 | 1/ 06 | [redacted] | Sold | [redacted] | [redacted] | [redacted] |
| 12/ 31 | 1/ 06 | INTERCLOUD SYS INC COM NEW (ICLD ) | Bought | 2,000.000 | 18.35000 | -36,707.95 |
| 12/ 31 | 1/ 06 | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

Apr 21 16 12:18a

**Fidelity**
INVESTMENTS

**2013 Investment Report**

January 1, 2013 - December 31, 2013

FIDELITY
PREMIUM SERVICES℠

---

**Fidelity Account** ℠ ▓▓▓▓▓    CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

## Transaction Details of Core Account

**Core Account**  - *Fidelity Municipal Money Market*

| Description | Amount | Balance | Description | Amount | Balance |
|---|---|---|---|---|---|
| **Beginning** | | ▓▓▓▓ | Core account income | ▓▓▓▓ | |
| *Investment Activity* | | | Income | | |
|   Securities bought | -▓▓▓▓ | |   Subtotal of Investment Activity | | |
|   Securities sold | ▓▓▓▓ | | **Ending** | | ▓▓▓▓ |



### Investment Activity

### Trades Pending Settlement on December 31, 2013

*All gains or losses from security transactions should be reported by trade date to comply with IRS regulations. The proceeds reported on your Investment Reports are based on settlement date and, therefore, may not match the proceeds listed on your form 1099-B. The pending trades listed below will appear on your 2013 Tax Reporting Statement (mailed under separate cover).*

| Trade Date | Settlement Date | Security | Description | Quantity | Price per Unit | Settlement Amount |
|---|---|---|---|---|---|---|
| 12/ 27 | 1/ 02 | INTERCLOUD SYS INC COM NEW (ICLD) | Bought | 5,000.000 | $15.25000 | -$76,257.95 |
| 12/ 27 | 1/ 02 | INTERCLOUD SYS INC COM NEW (ICLD) | Bought | 10,000.000 | 15.30000 | -153,007.95 |
| 12/ 27 | 1/ 02 | INTERCLOUD SYS INC COM NEW (ICLD) | Bought | 10,000.000 | 15.50000 | -155,007.95 |
| 12/ 27 | 1/ 02 | INTERCLOUD SYS INC COM NEW (ICLD) | Bought | 12,000.000 | 15.10000 | -181,207.95 |
| 12/ 27 | 1/ 02 | INTERCLOUD SYS INC COM NEW (ICLD) | Sold | -5,000.000 | 15.35000 | 76,740.71 |
| 12/ 27 | 1/ 02 | INTERCLOUD SYS INC COM NEW (ICLD) | Sold | -10,000.000 | 15.65000 | 156,489.32 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD) | Bought | 14,909.000 | 17.35000 | -258,679.10 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD) | Bought | 91.000 | 17.31500 | -1,575.67 |
| 12/ 30 | 1/ 03 | INTERCLOUD SYS INC COM NEW (ICLD) | Bought | 15,000.000 | 17.60000 | -264,007.95 |

# Fidelity INVESTMENTS

FIDELITY
PREMIUM SERVICES℠

**Investment Report**

January 1, 2014 - January 31, 2014

---

**Fidelity Account**℠ ▓▓▓▓▓   CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

---



| Account Summary | |
|---|---|
| Beginning value as of Jan 1 | ▓▓▓▓ |
| Transaction costs, loads and fees | ▓▓▓▓ |
| Change in investment value | ▓▓▓▓ |
| **Ending value as of Jan 31** | ▓▓▓▓ |
| | |
| Accrued Interest (AI) | $0.00 |
| Change in AI from last statement | $0.00 |
| | |
| Account trades from Feb 2013 - Jan 2014 | 78 |

| Income Summary | This Period | Year to Date |
|---|---|---|
| **Tax-exempt** | | |
| Dividends | $2.07 | $2.07 |

| Realized Gain/Loss from Sales | This Period | Year to Date |
|---|---|---|
| Short-term gain | ▓▓▓ | ▓▓▓ |
| Short-term loss | | |
| St disallowed loss | | |
| **Net short** | 2,▓▓▓.▓▓ | 2,▓▓▓.▓▓ |

*This may not reflect all of your gains/losses because of incomplete cost basis.*

---

**Holdings**  (Symbol) as of January 31, 2014



| | Performance January 31, 2014 | Quantity January 31, 2014 | Price per Unit January 31, 2014 | Total Cost Basis | Total Value January 1, 2014 | Total Value January 31, 2014 |
|---|---|---|---|---|---|---|
| **Stocks** *89% of holdings* | | | | | | |
| INTERCLOUD SYS INC COM NEW (ICLD ) | | 33,065.000 | $14.620 | $574,068.15 | ▓▓▓▓ | $483,410.30 |
| ▓▓▓▓ | ▓% | ▓▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| ▓▓▓▓ | | 640.000 | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| ▓▓▓▓ | | | | ▓▓ | | ▓▓ |
| ▓▓▓▓ | | ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ |
| VERIZON COMMUNICATIONS (VZ ) | | | | | 98.28 | ▓▓ |
| **Subtotal of Stocks** | | | | | | |
| **Core Account** *11% of holdings* | | | | | | |
| FIDELITY MUNICIPAL MONEY MARKET (FTEXX ) | 7-day Yield: 0.01% | ▓▓ | 1.000 | not applicable | ▓▓ | ▓▓ |

---



**Investment Report**

February 1, 2014 - February 28, 2014

FIDELITY
PREMIUM SERVICES℠

---

**Fidelity SEP-IRA**   ▬▬▬▬   CHARLES R GILBERT JR - SEP-IRA - FIDELITY MANAGEMENT TRUST CO - CUSTODIAN

**Account Summary**

| | |
|---|---|
| Beginning value as of Feb 1 | ▬▬▬ |
| Transaction costs, loads and fees | ▬▬▬ |
| Change in investment value | ▬▬ |
| **Ending value as of Feb 28** | ▬▬▬ |
| | |
| Accrued Interest (AI) | $0.00 |
| Change in AI from last statement | $0.00 |
| | |
| Account trades from Mar 2013 - Feb 2014 | 9 |

**Income Summary**

| | This Period | Year to Date |
|---|---|---|
| **Tax-deferred** | ▬▬ | ▬▬2 |

---

**Holdings**  (Symbol) as of February 28, 2014

**Stocks 90% of holdings**

| | Performance February 28, 2014 | Quantity February 28, 2014 | Price per Unit February 28, 2014 | Cost | Total Value February 1, 2014 | Total Value February 28, 2014 |
|---|---|---|---|---|---|---|
| | | ▬▬▬ | ▬▬▬ | ▬▬▬ | ▬▬▬ | ▬▬▬ |
| ( ▬▬ N ) | | 200.000 | ▬▬ | 10,012.00 | 9,048.00 | ▬▬▬ |
| ( ▬▬ ) | | 100.000 | ▬▬ | unknown | 1,004.00 | 1,040.00 |
| | | 200.000 | ▬▬ | ▬▬ | ▬▬▬ | 1,040.00 |
| | | 200.000 | ▬▬ | ▬▬ | ▬▬▬ | ▬▬▬ |
| | | ▬▬▬ | ▬▬ | ▬▬ | ▬▬▬ | ▬▬▬ |
| | | ▬▬ | ▬▬ | ▬▬ | ▬▬▬ | ▬▬▬ |
| INTERCLOUD SYS INC COM NEW (ICLD ) | | 4,500.000 | 13.440 | 78,170.67 | 58,480.00 | 60,480.00 |
| | | ▬▬▬ | ▬▬ | ▬▬ | ▬▬▬ | ▬▬▬ |
| | | ▬▬▬ | ▬▬ | ▬▬ | ▬▬▬ | ▬▬▬ |

---



**Investment Report**

February 1, 2014 - February 28, 2014

FIDELITY
PREMIUM SERVICES℠

---

**Fidelity Account** ℠      CHARLES R GILBERT JR - INDIVIDUAL

**Core Account** - *Fidelity Municipal Money Market*

| Description | Amount | Balance | Description | Amount | Balance |
|---|---|---|---|---|---|
| **Beginning** | | $0.21 | **Ending** | | $0.21 |

---

**Fidelity Account** ℠      CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

**Account Summary**

| | |
|---|---|
| Beginning value as of Feb 1 | |
| Additions | |
| Transaction costs, loads and fees | |
| Change in investment value | |
| **Ending value as of Feb 28** | |
| | |
| Accrued Interest (AI) | $0.00 |
| Change in AI from last statement | $0.00 |
| | |
| Account trades from Mar 2013 - Feb 2014 | 96 |

**Income Summary**

| | This Period | Year to Date |
|---|---|---|
| **Taxable** | | |
| Dividends | | |
| **Tax-exempt** | | |
| Dividends | 0.58 | 2.65 |
| **Total** | | |

**Realized Gain/Loss from Sales**

| | This Period | Year to Date |
|---|---|---|
| Short-term gain | | |
| Short-term loss | | |
| St disallowed loss | | |
| **Net short** | | |
| | | |
| Long-term loss | | |

*This may not reflect all of your gains/losses because of incomplete cost basis.*

**Holdings** (Symbol) as of February 28, 2014

| | Performance February 28, 2014 | Quantity February 28, 2014 | Price per Unit February 28, 2014 | Total Cost Basis | Total Value February 1, 2014 | Total Value February 28, 2014 |
|---|---|---|---|---|---|---|
| **Stocks** 77% of holdings | | | | | | |
| INTERCLOUD SYS INC COM NEW (ICLD) | | 34,065.000 | $13.440 | $587,326.10 | $483,410.30 | $457,833.60 |
| | | | | unknown | | |
| | | | | | | |



**FIDELITY**
**PREMIUM SERVICES**℠

**Investment Report**

March 1, 2014 - March 31, 2014

**Fidelity SEP-IRA** ████  CHARLES R GILBERT JR - SEP-IRA - FIDELITY MANAGEMENT TRUST CO - CUSTODIAN

**Holdings**  (Symbol) as of March 31, 2014

| | Performance March 31, 2014 | Quantity March 31, 2014 | Price per Unit March 31, 2014 | Cost | Total Value March 1, 2014 | Total Value March 31, 2014 |
|---|---|---|---|---|---|---|
| INTERCLOUD SYS INC COM NEW (ICLD ) | | 4,500.000 | 8.490 | 78,170.67 | 60,480.00 | 38,205.00 |
| **Subtotal of Stocks** | | | | | | |

**Core Account** *12% of holdings*
FIDELITY CASH RESERVES (FDRXX )   *7-day Yield: 0.01%*



**FIDELITY**
**PREMIUM SERVICES**℠

**Investment Report**

March 1, 2014 - March 31, 2014

---

**Fidelity Account** ℠    CHARLES R GILBERT JR - INDIVIDUAL

**Core Account**  - *Fidelity Municipal Money Market*

| Description | Amount | Balance | Description | Amount | Balance |
|---|---|---|---|---|---|
| **Beginning** | | $0.21 | **Ending** | | $0.21 |

---

**Fidelity Account** ℠    CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

**Account Summary**

| | |
|---|---|
| Beginning value as of Mar 1 | |
| Transaction costs, loads and fees | |
| Change in investment value | |
| **Ending value as of Mar 31** | |
| Accrued Interest (AI) | $0.00 |
| Change in AI from last statement | $0.00 |
| Account trades from Apr 2013 - Mar 2014 | 98 |

**Income Summary**

| | This Period | Year to Date |
|---|---|---|
| **Taxable** | | |
| Dividends | | |
| **Tax-exempt** | | |
| Dividends | 1.16 | 3.81 |
| **Total** | | |

**Realized Gain/Loss from Sales**

| | This Period | Year to Date |
|---|---|---|
| Short-term gain | $0.00 | |
| Short-term loss | 0.00 | |
| St disallowed loss | 0.00 | |
| **Net short** | **0.00** | |
| Long-term loss | $0.00 | |

*This may not reflect all of your gains/losses because of incomplete cost basis.*

---

**Holdings**  (Symbol) as of March 31, 2014

| | Performance March 31, 2014 | Quantity March 31, 2014 | Price per Unit March 31, 2014 | Total Cost Basis | Total Value March 1, 2014 | Total Value March 31, 2014 |
|---|---|---|---|---|---|---|
| **Stocks 79% of holdings** | | | | | | |
| INTERCLOUD SYS INC COM NEW (ICLD ) | | 38,065.000 | $8.490 | $646,742.00 | $457,833.60 | $323,171.85 |

---




**lelity**
TMENTS

RVICES℠

**Investment Report**

January 1, 2014 - January 31, 2014

**nt** ℠ ████████ CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

**Details**

| urity | Description | Quantity | Price per Unit | Cost Basis of Close | Transaction Amount |
|---|---|---|---|---|---|
| ERCLOUD SYS INC COM NEW | *Short-term gain: $104.23*<br>You sold<br>Transaction cost: -$8.16 | -687.000 | 16.85000 | 11,473.45f | 11,567.79 |
| ERCLOUD SYS INC COM NEW | *Short-term gain: $94.34*<br>You sold<br>Transaction cost: -$0.18 | -600.000 | 16.85000 | 10,020.48f | 10,109.82 |
| ERCLOUD SYS INC COM NEW | *Short-term gain: $89.34*<br>You sold<br>Transaction cost: -$0.13 | -415.000 | 16.85000 | 6,930.83f | 6,992.62 |
| ERCLOUD SYS INC COM NEW | *Short-term gain: $61.79*<br>You sold<br>Transaction cost: -$0.12 | -403.000 | 16.85000 | 6,730.42f | 6,790.43 |
| ERCLOUD SYS INC COM NEW | *Short-term gain: $60.01*<br>You sold<br>Transaction cost: -$0.09 | -300.000 | 16.85000 | 5,010.24f | 5,054.91 |
| ERCLOUD SYS INC COM NEW | *Short-term gain: $44.67*<br>You sold<br>Transaction cost: -$0.09 | -295.000 | 16.85000 | 4,926.73f | 4,970.66 |
| TERCLOUD SYS INC COM NEW | *Short-term gain: $43.93*<br>You sold<br>Transaction cost: -$0.03 | -100.000 | 16.85000 | 1,670.08f | 1,684.97 |
| TERCLOUD SYS INC COM NEW | *Short-term gain: $14.89*<br>You sold<br>Transaction cost: -$0.03 | -100.000 | 16.85000 | 1,670.08f | 1,684.97 |
| TERCLOUD SYS INC COM NEW | *Short-term gain: $14.89*<br>You sold<br>Transaction cost: -$7.96 | -10.000 | 16.30000 | 162.01f | 155.04 |
| NDISK CORP | *Short-term loss: $6.97*<br>*Short-term disallowed loss: $6.97*<br>*Wash sale of 1/02/14: $6.97*<br>You bought<br>Transaction cost: -$7.95 | 300.000 | 73.70000 | | -22,117.95 |



FIDELITY
PREMIUM SE

**Fidelity Accou**
**Transaction D**
*Investment Activi*

| Settlement Date | Secu |
| --- | --- |
| 1/07 | INT |
| 1/07 | INT |
| 1/07 | INT |
| 1/07 | INT |
| 1/07 | INT |
| 1/07 | INT |
| 1/07 | IN |
| 1/07 | IN |
| 1/07 | IN |
| 1/23 | SA |

0001



**Investment Report**

January 1, 2014 - January 31, 2014

FIDELITY
PREMIUM SERVICES℠

**Fidelity Account** ℠ ●●●●●●●●   CHARLES R GILBERT JR AND TERESA L KENDRICK - WITH RIGHTS OF SURVIVORSHIP TOD

**Transaction Details**

### Investment Activity

| Settlement Date | Security | Description | Quantity | Price per Unit | Cost Basis of Close | Transaction Amount |
|---|---|---|---|---|---|---|
| 1/06 | ~~COM~~ ~~NORKS~~ | ~~sold~~ ~~Transaction cost: -$8.54~~ | | | ~~1,5 1.45~~ | ~~55,441.4~~ |
| 1/07 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 10,000.000 | 16.20000 | | -162,007.95 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 10,000.000 | 16.67000 | | -166,707.95 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 10,000.000 | 16.70000 | | -167,007.95 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$2.27 *Short-term gain: $790.38* | -7,990.000 | 16.30000 | 129,444.35f | 130,234.73 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$0.59 *Short-term gain: $297.83* | -2,000.000 | 16.85000 | 33,401.58f | 33,699.41 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$0.59 *Short-term gain: $297.82* | -2,000.000 | 16.85000 | 33,401.59f | 33,699.41 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$0.50 *Short-term gain: $253.15* | -1,700.000 | 16.85000 | 28,391.35f | 28,644.50 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$0.29 *Short-term gain: $98.92* | -1,000.000 | 16.30000 | 16,200.79f | 16,299.71 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$0.29 *Short-term gain: $98.91* | -1,000.000 | 16.30000 | 16,200.80f | 16,299.71 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$0.21 *Short-term gain: $104.23* | -700.000 | 16.85000 | 11,690.56f | 11,794.79 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$0.21 | -700.000 | 16.85000 | 11,690.56f | 11,794.79 |



**Investment Report**

January 1, 2014 - January 31, 2014

FIDELITY
PREMIUM SERVICES ℠

---

**Fidelity SEP-IRA** ▓▓▓▓▓▓    CHARLES R GILBERT JR - SEP-IRA - FIDELITY MANAGEMENT TRUST CO - CUSTODIAN

---

**Estimated Cash Flow** rolling as of January 31, 2014 (continued)

-- not available

**Bond & CD Income** includes interest payments for fixed rate bonds and Certificates of Deposit (CDs).
**Bond & CD Principal** includes maturing principal payments for CDs and the following bonds: fixed rate, floating rate, variable rate, discount, and zero coupon.
**Stock Income** includes estimated dividend payments for common stock, ADR's, and REITs.
**Mutual Fund Income** includes estimated dividend payments for Fidelity and non-Fidelity mutual funds.

**The table above does not include cash flow from the following securities:** preferred stocks, international stocks, exchange trade products (ETF's & ETN's), UITs, variable rate bonds, and international bonds, but may be included in future enhancements.

---

## Transaction Details         (for holdings with activity this period)

**Core Account** - *Fidelity Cash Reserves*

| Description | Amount | Balance | | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| Beginning | | ▓▓▓▓▓▓ | | Core account income | 0.44 | |
| Investment Activity | | | | Income | 175.50 | |
| Securities bought | $178,597.75 | | | Subtotal of Investment Activity | ▓▓▓▓▓▓ | |
| Securities sold | ▓▓▓▓▓▓ | | | Ending | | ▓▓▓▓▓▓ |

---

**Investment Activity**

| Settlement Date | Security | Description | Quantity | Price per Unit | Cost | Transaction Amount |
|---|---|---|---|---|---|---|
| 1/02 | ▓▓▓▓▓▓ | ▓▓▓▓ received | | | | ▓▓▓▓▓▓ |
| 1/06 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 3,000.000 | $18.30000 | | -54,907.95 |
| 1/06 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 5,000.000 | 18.50000 | | -92,507.95 |
| 1/06 | INTERCLOUD SYS INC COM NEW | You sold Transaction cost: -$9.57 *Transaction Profit $1,079.30* | -5,000.000 | 18.60000 | $91,911.13 | 92,990.43 |
| 1/07 | INTERCLOUD SYS INC COM NEW | You bought Transaction cost: -$7.95 | 1,000.000 | 16.00000 | | -16,007.95 |

# EXHIBIT C

◆ Positive

As of: May 27, 2016 11:06 AM EDT

# *In re Red Hat*, Inc. Secs. Litig.

United States District Court for the Eastern District of North Carolina, Western Division

August 28, 2009, Decided

Master File No. 5:04-CV-473-BR

**Reporter**

261 F.R.D. 83; 2009 U.S. Dist. LEXIS 93493

IN RE: **RED HAT**, INC. **SECURITIES LITIGATION**

**Subsequent History:** Magistrate's recommendation at *In re Red Hat, Inc. Sec. Litig., 2010 U.S. Dist. LEXIS 68619 (E.D.N.C., June 11, 2010)*

## Core Terms

stock, subscription, misrepresentation, certification, traded, class representative, **class certification**, defendants', seal, class period, predominance, disclosure, requirements, appointed, analyst, fraud-on-the-market, documents, parties, class action, materiality, businesses, customers, investors, software, shares, days, lead plaintiff, Investments, **Securities**, causation

## Case Summary

### Procedural Posture

Plaintiffs, purchasers of the common stock of defendant corporation brought multiple **securities** fraud class action suits against the corporation and defendants, its officers, and alleged claims under § 10(b) (*15 U.S.C.S. § 78j(b)*) of the **Securities** Exchange Act of 1934 and *Rule 10b-5* thereunder, and § 20(a) (*15 U.S.C.S. § 78t(a)*) of the Act. Plaintiff, a proposed class representative, moved for **class certification** under *Fed. R. Civ. P. 23*.

### Overview

The court found that the proposed class representative was adequate under *Fed. R. Civ. P. 23(a)(4)* because he was familiar with the procedural history of the case, identified the alleged wrongdoing by the corporation and its officers, knew the class period, knew his purported loss, reviewed documents before they were filed, and had communicated with counsel on a number of occasions. Moreover, the court read the proposed class representative's deposition and was convinced that his testimony was not so evasive or incredible as to warrant denial of **class certification**, that he was sufficiently involved in the **litigation**, and that he did not

have interests antagonistic to the class. Because the proposed class representative showed that the corporation and its officers made public, material misrepresentations, that the corporation's stock traded on an efficient market; and that he traded shares between the time the misstatements were made and the disclosure of the truth, the class was entitled to invoke the fraud-on-the-market presumption. Because the presumption could be proven, and rebutted, commonly, common questions of liability predominated under *Fed. R. Civ. P. 23(b)(3)*.

### Outcome

The proposed class representative's motion for **class certification** was allowed. The cross-motions to exclude expert reports were denied without prejudice.

## LexisNexis® Headnotes

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

*HN1* It is well settled that the plaintiff seeking to represent the class bears the burden of showing that the requirements of *Fed. R. Civ. P. 23* are met. Every class action must satisfy the four requirements of *Fed. R. Civ. P. 23(a)*, numerosity, typicality, commonality, and adequacy of representation. That is, respectively: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Fed. R. Civ. P. 23(a)*. Also, the action must meet one of the alternative requirements of *Fed. R. Civ. P. 23(b)*

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

*HN2* *Fed. R. Civ. P. 23(b)(3)* requires the court to find: (1) that questions of law or fact common to the members of the class predominate over any questions affecting only

261 F.R.D. 83, *83; 2009 U.S. Dist. LEXIS 93493, **93493

individual members, the predominance requirement; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Pertinent to the court's determination of whether these requirements are met are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any *litigation* concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the *litigation* of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Fed. R. Civ. P. 23(b)(3)*.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

*Securities* Law > ... > *Securities* Exchange Act of 1934 Actions > Implied Private Rights of Action > Class Actions

*HN3* *Securities litigation* is particularly well suited to class action treatment. Despite the recognition that *Fed. R. Civ. P. 23* should be given a liberal rather than restrictive construction, the court must nonetheless conduct a rigorous analysis. The court is not required to accept the complaint's allegations in resolving a motion for *class certification*. To determine whether the requirements of *Fed. R. Civ. P. 23* are met, the court may very well make findings which overlap with the merits of the case. That practice is entirely permissible.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Adequacy of Representation

*HN4* *Fed. R. Civ. P. 23(a)* requires that the representative parties will fairly and adequately protect the interests of the class. *Fed. R. Civ. P. 23(a)(4)*. That requirement has two aspects: whether the named representative will vigorously prosecute the action through qualified counsel and whether the class representatives have conflicting interests with the unnamed class members. Generally, to satisfy *Fed. R. Civ. P. 23(a)(4)*, *(1)* counsel must be qualified, experienced, and generally able to conduct the proposed *litigation*; and (2) plaintiffs' claims must be sufficiently interrelated with and not antagonistic to the class claims. The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Adequacy of Representation

*HN5* Pursuant to *Fed. R. Civ. P. 23(g)(1)*, in appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex *litigation*, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Adequacy of Representation

*HN6* Several factors bear on the court's assessment of the proposed representative. The court may consider his honesty, conscientiousness, and other affirmative personal qualities. The representative should have at the very least a basic understanding of the facts and nature of the lawsuit. The named plaintiffs in a class action need not be the best representatives of the class, and to say that they are not expected to understand every detail of their case is to understate the matter. Still, they must be able, at minimum, to make important nondelegable decisions about the course of the *litigation*; also, if the named plaintiffs are evasive, untruthful, or lack credibility, this weighs heavily against them as adequate class representatives.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

*HN7* Certification under *Fed. R. Civ. P. 23(b)(3)* requires the court to find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The inquiry with respect to the predominance standard focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones.

Securities Law > ... > Secondary Liability > Controlling Persons > Elements of Proof

*Securities* Law > ... > Implied Private Rights of Action > Elements of Proof > General Overview

*HN8* To succeed on a claim under § 10(b) (*15 U.S.C.S. § 78j(b)*) of the *Securities* Exchange Act of 1934 and *Rule 10b-5*, a plaintiff must show: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a *security*; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. Section 20(a) (*15 U.S.C.S. § 78t(a)*) of the Act directs joint and several liability against a person who controls another person who has violated any provision of the *Securities* Exchange Act or its regulations. Thus, the viability of the § 20(a) claim is dependent on the viability of the § 10(b) claim. Most of those elements are generally amenable to

Case 3:14-cv-01982-PGS-TJB   Document 95-3   Filed 06/01/16   Page 28 of 38 PageID: 1306

Page 3 of 13
261 F.R.D. 83, *83; 2009 U.S. Dist. LEXIS 93493, **93493

common proof; reliance, by contrast, is typically proven on an individual basis. Reliance can, however, be treated as a common issue if it is presumed under the theory that the defendants defrauded the market, not the individual plaintiffs, so long as the plaintiffs purchased their stock in an efficient market.

Securities Law > ... > Elements of Proof > Reliance > Fraud on the Market

*HN9* The fraud on the market theory is based on the hypothesis that, in an open and developed ***securities*** market, the price of a company's stock is determined by the available material information regarding the company and its business. Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in the case of direct reliance on misrepresentations. To gain the benefit of that presumption, a plaintiff must prove: (1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient market; and (4) that the plaintiff purchased the shares after the misrepresentations but before the truth was revealed.

Securities Law > ... > Elements of Proof > Materiality > General Overview

*HN10* A fact is material if there is a substantial likelihood that a reasonable purchaser or seller of a ***security***: (1) would consider the fact important in deciding whether to buy or sell the ***security***; or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact.

Securities Law > ... > Elements of Proof > Reliance > Fraud on the Market

*HN11* The United States Court of Appeals for the Fifth Circuit has determined that a plaintiff must show loss causation, by a preponderance of the evidence, at the ***class certification*** stage to trigger the fraud-on-the-market presumption. The United States District Court for the Eastern District of North Carolina, Western Division joins the courts that have declined to add another element to the plaintiff's burden of establishing the fraud-on-the-market presumption. There is no doubt the fraud-on-the-market presumption is subject to rebuttal. Petitioners may rebut

proof of the elements giving rise to the presumption, or show that the misrepresentation in fact did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false. Any showing that severs the link between the alleged misrepresentation and either the price received or paid by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance.

**Counsel:**  [**1] For John Borsellino, on behalf of himself and all others similarly situated, Union Group, Plaintiffs: Rufus L. Edmisten, LEAD ATTORNEY, Edmisten & Webb Law Firm, Raleigh, NC; William W. Webb, Sr., LEAD ATTORNEY, The Edmisten & Webb Law Firm, Raleigh, NC.

For Charles Gilbert, Plaintiff: L. Bruce McDaniel, LEAD ATTORNEY, McDaniel & Anderson, LLP, Raleigh, NC.

For Eric W Bushman, Lead Plaintiff, Steve Salek, Lead Plaintiff, Plaintiffs: Brandon S. Neuman, Shanahan Law Group, Raleigh, NC.

For Brockton Contributory Retirement System, Intervenor Plaintiff: Nigle B. Barrow, Jr., Raleigh, NC.

For ***Red Hat***, Inc., Mark H. Webbink, Paul J. Cormier, Timothy J. Buckley, Kevin B. Thompson, Matthew J. Szulik, Defendants: Christopher W. Jones, Pressly M. Millen, LEAD ATTORNEYS, Womble Carlyle Sandridge & Rice, PLLC, Raleigh, NC.

**Judges:** W. Earl Britt, Senior U.S. District Judge.

**Opinion by:** W. Earl Britt

# Opinion

[*84]   ORDER

This matter is before the court on the 14 January 2008 motion of plaintiff Charles Gilbert as the proposed class representative for ***class certification*** pursuant to *Fed. R. Civ. P. 23*. On 16 July 2008, the remaining defendants, ***Red Hat***, Inc. ("***Red Hat***"), Matthew Szulik, and Kevin Thompson, filed a response in opposition with   [**2] supporting documentation. [1] On 4 August 2008, Gilbert filed a reply with further supporting materials. In response, on 11

---

[1]   Briefing was delayed due to resolution of Gilbert's motion for a protective order and defendants' motion for extension of time to respond to the motion for ***class certification***.

261 F.R.D. 83, *84; 2009 U.S. Dist. LEXIS 93493, **2

September 2008, defendants moved to exclude portions of Gilbert's rebuttal expert report. Gilbert filed a memorandum in opposition, and defendants replied. On 22 December 2008, Gilbert filed a motion to exclude defendants' expert report and supplemental expert report, to which defendants filed an opposition brief, and Gilbert replied on 19 February 2009. Defendants then filed a suggestion of subsequently decided authority on 21 April 2009.

## I. BACKGROUND

As the court has recognized in prior orders, this action is a consolidation of multiple [**85**] proposed _securities_ fraud class action suits filed in this district. Via the Consolidated Amended Class Action Complaint filed 6 May 2005, plaintiffs assert claims under Section 10(b) of the _Securities_ Exchange Act of 1934, _15 U.S.C. § 78j(b)_ (and _Rule 10b-5, 17 C.F.R. § 240.10b-5_, thereunder), against _Red Hat_, its CEO Szulik, and its former CFO Thompson; [**3**] and under Section 20(a) of that Act, _15 U.S.C. § 78t(a)_, against Szulik and Thompson. [2] As Gilbert summarizes:

> The Complaint alleges that during the Class Period, [17 December 2002 through 12 July 2004,] Defendants improperly recognized revenue [for software subscriptions] before it was earned, and then used the backdated revenue to issue false financial reports to _Red Hat_ investors. Additionally, the Complaint alleges that during the Class Period, Defendants knowingly or recklessly made material misrepresentations and/or failed to disclose material facts to the investing public.

> Specifically, Plaintiff alleges that Defendants improperly recognized revenue in violation of the applicable accounting rules and standards . . . . Moreover, the Complaint alleges that Defendants misled investors during the Class Period by making numerous public statements stating that _Red Hat_ was deferring revenue ratably over the period of its subscriptions, when, in fact, it was secretly recognizing revenue before these subscriptions had begun and backdating revenue to the beginning of each monthly period. Indeed, Plaintiff alleges that as a result of these improper accounting practices, Defendants' financial [**4**] statements were materially inflated.

(Mot. Cert. at 1-2 (footnote and citations omitted).)

Initially, plaintiffs Steve Salek and Eric Bushman sought to certify the class. In May 2007, the court denied their motion to certify, finding Salek and Bushman inadequate class representatives. Subsequently Gilbert renewed his motion to be appointed lead plaintiff. [3] In November 2007, the court appointed Gilbert as Lead Plaintiff and set anew the discovery and briefing schedule for _**class certification**_.

Gilbert seeks to represent a class composed of

> all purchasers of the common stock of _**Red Hat**_ . . . between December 17, 2002 and July 12, 2004, inclusive and who were damaged thereby (the "Class"). . . .

> Excluded from the Class are Defendants _**Red Hat**_, [Szulik], and [Thompson] (collectively, "Defendants"), any [**5**] entity in which Defendants or any excluded person has or had a controlling interest, the officers and directors of _**Red Hat**_, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

(Mot. Cert. at 1.)

The proposed class period ends on the day prior to _**Red Hat**_'s public announcement that the company planned to restate its audited financial statements for the fiscal years ended 28 February 2002, 28 February 2003, and 29 February 2004, and its unaudited financial statements for fiscal quarter ended 31 May 2004. (See Consol. Am. Compl. P 99; Ans. P 99.) "The company said that the restatement was due to the correction in the manner in which the Company recognizes revenue for certain subscription agreements." (Consol. Am. Compl. P 99; see also Ans. P 99.) Specifically, _**Red Hat**_ explained, "'[I]t would be appropriate to stop recognizing revenue for subscription agreements on a monthly basis-- a method [the company] has consistently applied for the last five years-- and start recognizing revenue on a daily basis over the particular contract term.'" (Consol. Am. Compl. P 99 (quoting 13 July 2004 press release); [**6**] see also Ans. P 99.)

## II. DISCUSSION

_HN1_ It is well settled that the plaintiff seeking to represent the class bears the burden of [**86**] showing that the

---

[2]   On 12 May 2006, the court dismissed plaintiffs' Sarbanes-Oxley Act of 2002 claim and dismissed all claims against other _**Red Hat**_ officers and PricewaterhouseCoopers LLP.

[3]   In September 2004, Gilbert filed his initial motion for appointment as lead plaintiff. However, he later withdrew that motion, and the court appointed the "Union Group" as lead plaintiff, of which Salek and Bushman were members.

261 F.R.D. 83, *86; 2009 U.S. Dist. LEXIS 93493, **6

requirements of *Federal Rule of Civil Procedure 23* are met. *Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004)*. "Every class action must satisfy the four requirements of *Rule 23(a)*-- numerosity, typicality, commonality, and adequacy of representation . . . ." Id. (citation omitted). That is, respectively,

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*.

Also, the action must meet one of the alternative requirements of *Rule 23(b)*. *Gariety, 368 F.3d at 362.* Here, Gilbert is proceeding under **HN2** *Rule 23(b)(3)* "which requires the court to find (1) that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members' (the predominance requirement), and (2) that 'a class action [**7] is superior to other available methods for the fair and efficient adjudication of the controversy' (the superiority requirement)." Pertinent to the court's determination of whether these requirements are met are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any *litigation* concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the *litigation* of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

*Fed. R. Civ. P. 23(b)(3)*.

**HN3** *Securities litigation* is particularly well suited to class action treatment. *In re BearingPoint, Inc. Sec. Lit., 232 F.R.D. 534, 542 (E.D. Va. 2006)*. Despite the recognition that *Rule 23* should be given a "liberal rather than restrictive construction," *Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003)*, cert. denied, *542 U.S. 915, 124 S. Ct. 2837, 159 L. Ed. 2d 287 (2004)*, the court must nonetheless "conduct a 'rigorous analysis,'" *Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 318 & n.8 (4th Cir. 2006)*. The court is not required to accept the complaint's allegations in resolving [**8] a motion for *class certification*. *Gariety, 368 F.3d at 366*. To determine whether the requirements of *Rule 23* are met, the court may very well make findings which overlap with the merits of the case. This practice is entirely permissible. See id. ("Before deciding whether to allow a case to proceed as a class action . . . a judge should make whatever factual and legal inquiries are necessary under *Rule 23*. . . . And if some of the considerations under *Rule 23(b)(3)* . . . overlap the merits . . . then the judge must make a preliminary inquiry into the merits." (quoting *Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001))*.

With all these principles in mind, the court turns to the issues at hand. Defendants do not challenge the court's previous findings that the numerosity and commonality requirements of *Rule 23(a)*, (see 5/11/07 Order at 4-5), and the superiority requirement of *Rule 23(b)(3)*, (id. at 6-7), are met. Also, defendants do not explicitly contest that Gilbert has sufficiently shown that his claims are typical of the class. Gilbert purchased shares of **Red Hat** stock within the class period, (7/13/07 McDaniel Decl., Ex. A), and contends he suffered losses due [**9] to defendants' wrongful and premature recognition of revenue, (see Mugmon Aff. (DE # 167), Ex. K at 76, 79). As such, Gilbert has demonstrated that he is part of the proposed class and that he possesses the same interest and suffers the same injury as the class, and typicality is thus satisfied, see *Lienhart v. Dryvit Sys, Inc., 255 F.3d 138, 146 (4th Cir. 2001)*. Defendants do, however, challenge Gilbert's adequacy as the class representative and whether the predominance requirement of *Rule 23(b)(3)* is satisfied. The court will discuss adequacy and predominance [*87] in turn. [4]

A. Adequacy of Representation

---

[4]   The court agrees with defendants that despite having previously found the predominance requirement was satisfied, the court in its discretion may reconsider it now because the earlier finding was interlocutory. See *American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003)* (district court's power to reconsider and modify an earlier interlocutory order is committed to the discretion of the court and not limited by the law of the case doctrine). Of course, the court must examine Rule 23's typicality and adequacy requirements anew because those requirements are (proposed) class representative specific. [**10] See *Fed. R. Civ. P. 23(a)(4)* ("[T]he *representative parties* will fairly and adequately protect the interests of the class." (emphasis added)); *Tatum v. R.J. Reynolds Tobacco Co., 254 F.R.D. 59, 64 (M.D.N.C. 2008)* ("[W]hile the commonality requirement focuses on the claims of the class as a whole,

261 F.R.D. 83, *87; 2009 U.S. Dist. LEXIS 93493, **11

As recognized previously, **HN4** *Rule 23(a)* requires that "the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*.

"This requirement has two aspects: whether the named representative will vigorously prosecute the action through qualified counsel[ 5 ] and whether the class representatives have conflicting interests with the unnamed class members." [*Simpson v. Specialty Retail Concepts, 149 F.R.D. 94, 102 (M.D.N.C. 1993)]* (citation omitted); see also *Pearce v. PaineWebber, Inc., No. 3:02-2409-17, 2004 U.S. Dist. LEXIS 30426, 2004 WL 5282962, *7 (D.S.C. Aug. 13, 2004)* ("Generally, to satisfy *Rule 23(a)(4), (1)* counsel must be qualified, experienced, and generally able to conduct the  [**11] proposed *litigation*; and (2) plaintiffs' claims must be sufficiently interrelated with and not antagonistic to the class claims. The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously." (quotations, citations, and footnote omitted).

(5/11/07 Order at 9.)

**HN6** Several factors bear on the court's assessment of the proposed representative. The court may consider "his 'honesty, conscientiousness, and other affirmative personal qualities.'" *Shiring v. Tier Techs., Inc., 244 F.R.D. 307, 315 (E.D. Va. 2007)* (citation and footnote omitted). The representative should have at the very least a basic understanding of the facts and nature of the lawsuit. See

*Gunnells, 348 F.3d at 430* ("It is hornbook law . . . that "[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." (citation omitted); *Byes v. Telecheck Recovery Servs., 173 F.R.D. 421, 426, 427 (E.D. La. 1997)*. As one court has succinctly stated,

[t]he named plaintiffs in a class action need not be the best representatives of the class, and to say that they are not expected to understand every detail of their case is to understate the  [**13] matter. Still, they must be able, at minimum, to make important nondelegable decisions about the course of the *litigation*; also, if the named plaintiffs are evasive, untruthful, or lack credibility, this weighs heavily against them as adequate class representatives.

*Smyth v. Carter, 168 F.R.D. 28, 33 (W.D. Va. 1996)* (citation omitted).

 [*88]  Gilbert is an attorney licensed in Maryland and West Virginia, (Mugmon Aff. (DE # 167), Ex. K at 10), although it does not appear that he is actively engaged in the practice of law. He is involved in a snow removal business and several firearms-related businesses, ones which buy and sell 6 firearms as well as operate an indoor shooting range. (Id. at 9, 11, 35, 48, 156-60.) He is a self-described "in-and-out trader and [] retention trader" of *Red Hat* stock, (Mot. Cert. at 19), who allegedly lost approximately $ 360,000 as a

---

the typicality requirement focuses on the named plaintiff's claim." (citing Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir.1998)).

5    Defendants do not contend that Gilbert's counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia"), is not qualified to conduct the *litigation*. **HN5** Pursuant to *Fed. R. Civ. P. 23(g)(1)*,

[i]n appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex *litigation*, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class[.]

To date, Coughlin Stoia (and its predecessor firm) appears to have adequately prosecuted this action on behalf of the proposed class. As the court noted after having reviewed the firm's profile, the firm possesses the experience and qualification  [**12] to adequately represent the class. (11/13/07 Order at 5; see also McDaniel Decl. (DE # 135), Ex. G.)

6    At the time of Gilbert's deposition, the businesses were engaged in buying and selling firearms. (See Mugmon Aff. (DE # 167), Ex. K at 156-57.) Because the firearms license for one business was revoked and the license for another was denied, which is discussed further below, the court presumes none of Gilbert's businesses may currently deal in firearms.

261 F.R.D. 83, *88; 2009 U.S. Dist. LEXIS 93493, **13

result of defendants' wrongdoing, (Mugmon Aff. (DE # 167), Ex K. at 79). In terms of his involvement in and understanding of this case, as Gilbert points out, he is familiar with the procedural history of the case; identified the alleged wrongdoing by **_Red Hat_** and its officers; knows the class period; knows his purported loss; reviewed [**14] documents before they were filed; and has communicated with counsel on a number of occasions, (see Reply at 3 n.6, 4-5 & n.9), which the court agrees is a vastly different situation than that of the original proposed representatives, Salek and Bushman. In addition, Gilbert swears that he

> is committed to active direction of this **_litigation_** and maximizing the recovery for the class by attending hearings, depositions and/or trial as well as overseeing the preparation and filings of pleadings, as appropriate. [He] also intends to provide fair and adequate representation to the class by working with class counsel to obtain the largest recovery for the class consistent with good faith and meritorious advocacy.

(McDaniel Decl. (DE # 135), Ex. A at 2.)

Defendants challenge Gilbert's adequacy to represent the class on a number of grounds. First, [**15] they contend that "Gilbert's inability to manage his own important affairs in compliance with the law shows that he is incapable of being a class representative." (Defs.' Mem. Opp'n at 18 (emphasis omitted).) In 2005 and 2006, prompted by hundreds of willful violations of the Gun Control Act's record keeping requirements, the ATF revoked the federal firearms license ("FFL") of one of Gilbert's businesses and denied an application for a FFL for another of his businesses. American Arms Int'l, LLC v. Herbert, Civil No. DKC 2006-2468, at 3-4 (D. Md. Feb. 19, 2008). Upon the businesses' petition, the district court upheld the ATF's decision, id. at 15, and, in turn, the Court of Appeals for the Fourth Circuit affirmed the judgment of the district court, _563 F.3d 78 (4th Cir. 2009)_.

While the court will not minimize the seriousness of the violations or Gilbert's responsibility therefor as owner of the businesses, the court finds that such conduct does not implicate Gilbert's credibility to the extent the court would deem him inadequate to serve as class representative. Compare _In re Sepracor, Inc. Sec. Lit., 233 F.R.D. 52, 56-57 (D. Mass. 2005)_ (representative had omitted information in certification [**16] and answered interrogatory incorrectly; "[q]uestions of credibility which do not affect a plaintiff's ability to represent the class or to pursue the merits of the cause of action routinely fail to defeat **_class certification_**."

(citations omitted)); _Wood v. Capital One Auto Finance, Inc., No. 06-CV-7, 2006 U.S. Dist. LEXIS 67513, *9-10 (E.D. Wisc. Sept. 19, 2006)_ (representative had prior felony conviction for dishonesty; "[i]ndeed, while some courts have rejected the appointment of convicted felons as class representatives, a felony conviction does not necessarily preclude a person from serving as a class representative." (collecting cases)), with _Zemel Family Trust v. Philips Int'l Realty Corp., 205 F.R.D. 434, 436-37 (S.D.N.Y. 2002)_ (finding trustee of plaintiff trust subject to unique defenses and inadequate where he gave testimony directly contradictory to documentary evidence about his involvement in entities that were the subject of SEC sanctions); _Byes, 173 F.R.D. at 427-28_ (acknowledging that "[g]enerally unsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the **_litigation_**," yet noting that "some courts have refused [**17] to certify classes [*89] where the name plaintiff was guilty of prior fraudulent conduct or would be likely to present incredible testimony"; court found plaintiff inadequate based on a combination of factors, including a conviction for theft and submitting in the case an affidavit which was directly contradicted by her subsequent deposition testimony).

Next, defendants cite Gilbert's conduct in this case, specifically conduct related to the two certifications he submitted to the court in conjunction with his motions to be appointed lead plaintiff. Gilbert acknowledges that his first certification is inaccurate. (See Mugmon Aff. (DE # 167), Ex. K. at 60-61, 116.) As to Gilbert's second certification, the parties dispute whether it is in fact inaccurate. The court agrees, and defendants do not appear to dispute, that Gilbert's itemization of his purchases and sales of **_Red Hat_** stock during the class period (attached to his second certification) virtually mirrors the figures in the Fidelity Investments Cost Basis report. (Compare McDaniel Decl. (DE # 135), Ex. A, with Mugmon Aff. (DE # 167), Ex. R.) Defendants do, however, point out discrepancies between Gilbert's second certification and the [**18] transaction confirmations from Fidelity Investments for each of Gilbert's **_Red Hat_** trades. Defendants note that for more than 60 transactions the share price reflected on Gilbert's certification differs from the share price on the corresponding transaction confirmation. The difference is due to the commission Fidelity Investments assessed to Gilbert. On the Cost Basis report, the price per share does not include any commission, and Gilbert states just that at the conclusion of the chart documenting his losses, submitted with his renewed motion to be appointed lead plaintiff, (McDaniel Decl. (DE # 135), Ex. F). On the transaction confirmations, the price per share includes any commission. (See Mugmon Aff. (DE # 167),

261 F.R.D. 83, *89; 2009 U.S. Dist. LEXIS 93493, **18

Ex. M.) While the method of accounting for the commission in the price per share will obviously influence the amount of Gilbert's claimed losses, it is obvious that Gilbert, by relying on the Cost Basis report to complete his second certification, was not trying intentionally to inflate his losses.

Defendants also show that Gilbert did not record all transactions on his second certification for which there are transaction confirmations and they show that there are not transaction [**19] confirmations for all transactions Gilbert *did* record. The court cannot discern the reason for, and Gilbert has not explained, these inconsistencies between his certification and transaction confirmations. However, again, there is not any significant discrepancy between Gilbert's second certification and the Cost Basis report. The court therefore cannot say there is a complete lack of documentary support for the certification and calculation of losses. At bottom, it is clear, whatever the reason for the inconsistencies, they were not the result of any intentional misrepresentation on the part of Gilbert. Compare *Sepracor, 233 F.R.D. at 56* (finding plaintiff was qualified to represent class although he had omitted nine class period transactions from his certification, information which was ultimately provided in discovery), with *Shiring, 244 F.R.D. at 310, 317* (finding plaintiff had not demonstrated the requisite credibility as he had falsely stated on his certifications the date and price per share about his apparent one and only class period transaction).

Defendants' remaining objections relate to Gilbert's testimony about why he traded in ***Red Hat*** stock and to his control over and [**20] involvement in this ***litigation***. The court has read Gilbert's deposition in its entirety and is convinced that his testimony is not so evasive or incredible as to warrant denial of ***class certification***, that he is sufficiently involved in the ***litigation***, and that he does not have interests antagonistic to the class.

Based on the foregoing, the court concludes Gilbert makes an adequate class representative.

B. Predominance

As noted, plaintiffs seek **HN7** certification under *Rule 23(b)(3)*, which requires the court to "find[] that the

questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ." "The inquiry with respect to the predominance standard focuses on the issue of liability, and if the liability [*90] issue is common to the class, common questions are held to predominate over individual ones." *In re BearingPoint, Inc., 232 F.R.D. at 542* (quotation and citation omitted).

**HN8** To succeed on a claim under *§ 10(b)* and *Rule 10b-5*,[7] a plaintiff must show

"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a ***security***; (4) reliance [**21] upon the misrepresentation or omission; (5) economic loss; and (6) loss causation" (that is, the economic loss must be proximately caused by the misrepresentation or omission).

*In re Mutual Funds Invest. Lit., 566 F.3d 111, 119 (4th Cir. 2009)* (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627 (2008))*.

"Most of these elements are generally amenable to common proof; reliance, by contrast, [**22] is typically proven on an individual basis." *In re Boston Scientific Corp. Secs. Lit., 604 F. Supp. 2d 275, 283 (D. Mass. 2009)* (citation omitted). "Reliance can, however, be treated as a common issue if it is *presumed* under the theory that the defendants defrauded the market-- not the individual plaintiffs-- so long as the plaintiffs purchased their stock in an efficient market." *Gariety, 368 F.3d at 363*.

**HN9** The fraud on the market theory is based on the hypothesis that, in an open and developed ***securities*** market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no

---

[7]   As recognized earlier, plaintiffs also raise a § 20(a) claim against the individual defendants. That section directs joint and several liability against a person who controls another person who has violated any provision of the ***Securities*** Exchange Act or its regulations. 15 U.S.C. § 78t(a). Thus, the viability of the § 20(a) claim is dependent on the viability of the § 10(b) claim. See In re Mutual Funds Lit., 566 F.3d at 130 (claim of control person liability under § 20(a) requires a predicate violation of ***§ 10(b)***); Teachers' Retirement System of La. v. Hunter, 477 F.3d 162, 188 (4th Cir. 2007) (upholding dismissal of § 20(a) claim because such claim "requires a predicate violation of law" and the complaint failed to adequately allege a § 10(b) claim).

261 F.R.D. 83, *90; 2009 U.S. Dist. LEXIS 93493, **22

less significant than in the case of direct reliance on misrepresentations.

*Basic, Inc. v. Levinson, 485 U.S. 224, 241-42, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988).*

As our Court of Appeals has consistently recognized,

> To gain the benefit of th[is] presumption, a plaintiff must prove '(1) that the defendant made public misrepresentations; (2) that **[**23]** the misrepresentations were material; (3) that the shares were traded on an efficient market'; and (4) that the plaintiff purchased the shares after the misrepresentations but before the truth was revealed.

*In re Mutual Funds, 566 F.3d at 120* (quoting *Gariety, 368 F.3d at 364*); see also *In re PEC Solutions, Inc.* **Securities Litigation**, *418 F.3d 379, 387, 125 Fed. Appx. 490 (4th Cir. 2005)* ("To establish reliance under a 'fraud on the market' theory, . . . a plaintiff needs only to show the means of dissemination and the materiality of the misrepresentation, not 'direct' reliance.'" (citing *Basic, 485 U.S. at 243-47*).

In this case, Gilbert invokes this presumption to show that reliance is a class-wide issue and claims he satisfies all the necessary elements. There is no dispute that **Red Hat** stock traded on an efficient market. [8] In 2004, the stock traded on Nasdaq; it currently trades on the New York Stock Exchange. See *http://investors.redhat.com/faq.cfm* # (printed and attached hereto). [9] **[**91]** In 2004, the average trading volume exceeded approximately 4 million shares in any given month. See *http://finance.yahoo.com/q/hp?s=RHT&a=00&b=1&c=2004&d=11&e=31&f=2004&g=m* (printed and attached hereto). A number of analysts **[**24]** follow the stock. See *http://investors.redhat.com/analysts.cfm* (printed and attached hereto). [10] These factors

support the finding of market efficiency for **Red Hat** stock. See *Gariety 368 F.3d at 368* ("[T]o determine whether a **security** trades on an efficient market, a court should consider factors such as, among others, whether the **security** is actively traded, the volume of trades, and the extent to which it is followed by market professionals." (citation omitted)). Also, it is undisputed that defendants made the alleged misrepresentations at issue publicly via SEC filings, press releases, analyst conference calls, and an interview. (See Consol. Am. Compl. PP 114-87; Ans. PP 114-87.)

Defendants characterize their opposition to application of the fraud-on-the-market presumption as one regarding the "materiality of the challenged statements" and contend Gilbert must establish loss causation for the presumption to apply. (Defs.' Mem. Opp'n at 2, 27.) As noted previously, materiality is one of the elements a plaintiff must prove to be entitled to use the presumption. *HN10* "A fact is material 'if there is a substantial likelihood that a reasonable purchaser or seller of a **security** (1) would consider the fact important in deciding whether to buy or sell the **security** or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact.'" *In re PEC Solutions, 418 F.3d at 387.* There is no assertion that this definition of materiality is not met. In a nutshell, plaintiffs allege that **Red Hat** engaged in a number of violations of accounting rules and standards, which resulted in inflated revenues and the issuance of false financial statements. **[**26]** Plaintiffs also advance that **Red Hat** misled investors about its method of accounting for subscription revenue. Certainly the disclosure of this information would be deemed important to a reasonable investor, and therefore, the court concludes that materiality is shown. [11]

Defendants' first argument regarding Gilbert's invocation of the fraud-on-the-market presumption merges consideration of various elements-- standing, typicality, the class period,

---

[8]   Gilbert submitted an expert report from Steven P. Feinstein to support a finding that **Red Hat** stock traded on an efficient market, among other things. (See Feinstein Report (DE # 175), at PP 15, 39-89.) Defendants do not challenge Gilbert's opinion that the market for **Red Hat** stock was efficient during the class period and beyond. (See Defs.' Mot. Exclude (DE # 176).)

[9]   With regard to this webpage and successive ones, the reader will note that the court did not print all information contained on the cited **[**25]** page; the court printed only relevant information.

[10]   The court notes that **Red Hat** lists current analyst coverage, but has no reason to believe analyst coverage differed significantly in 2004.

[11]   In fact, the price of **Red Hat** stock dropped after each of the various disclosures purportedly associated with the revelation of **Red Hat**'s fraud. (Consol. Am. Compl. PP 86, 92, 106; Ans. PP 86, 92, 106.) Arguably, such price drops may be evidence of materiality. See *Greenhouse v. MCG Capital Corp., 392 F.3d 650, 660-61 (4th Cir. 2004)* (recognizing "[t]he majority rule seems to be that [a stock's price history] can be some evidence" of whether a fact was material, but declining to take a position on "this thorny issue"). The parties' experts agree that statistically significant stock price declines occurred after certain company announcements. Compare Mugmon Aff. (DE # 167), Ex. J with Feinstein Report (DE # 175). They differ, however, in their opinions as to what caused those changes in price.

261 F.R.D. 83, *91; 2009 U.S. Dist. LEXIS 93493, **26

and the elements of the presumption itself. Irrespective of how one characterizes the argument, it is not sufficient for defendants to win the day. Specifically, defendants argue that on 25 March 2003, **_Red Hat_** publicly disclosed that it recognized subscription revenue monthly and that the disclosure had no effect on **_Red Hat_**'s stock price. Defendants point out that the market did not react adversely to the disclosure; that this disclosure occurred prior to the end of the proposed class period; and that Gilbert did not purchase shares of **_Red Hat_** stock until after the disclosure and therefore suffered no economic loss (i.e., injury). (See Defs.' Mem. Opp'n at 2-3, 29.)

Resolution of this issue depends on whether **_Red Hat_** in fact disclosed the "truth"-- its subscription revenue method-- on 25 March 2003. In support of their argument that it did, defendants show that **_Red Hat_** disclosed as late as 10 January 2003, in an SEC filing, that it recognized subscription revenue [**28] "ratably over the period that the subscription services are provided" in accordance with [*92] Statement of Position No. 97-2. [12] (See Mugmon Aff. (DE # 167), Ex. I.) Defendants acknowledge that **_Red Hat_** had not previously announced the units of time (i.e., minutes, hours, days, months) it used to allocate this revenue ratably[.]" (Defs.' Mem. Opp'n at 5.) Defendants go on to rely on then-CFO Thompson's statement on 25 March 2003 during a conference call with analysts:

> I think one thing to keep in mind . . . as you look at our balance sheet and our deferred revenue balance, our revenues are recognized monthly, and our deferred revenues are driven by the payment terms and billing terms we have with our customers, so the growth in deferred revenue relates to both the timing of the bookings of subscriptions during the quarter and how much the customers agree to pay up front versus what they decide to pay quarterly.

(Mugmon Aff. (DE # 167), Ex. D at 7.) Defendants contend

that this statement, in conjunction with the previous disclosure of ratable recognition, revealed the company's subscription revenue recognition policy. Thus, defendants continue, a presumption of class reliance cannot apply [**29] after this date and, because he did not purchase shares until after this date, Gilbert suffered no economic loss and cannot represent the class.

The picture is not so clear, however, as defendants paint it. As the court has recognized previously, Thompson's 25 March 2003 statement does not necessarily lead one to believe that **_Red Hat_** was pulling subscription [**30] revenues back to the beginning of the month. (See 5/12/06 Order at 8 n.11.) This is particularly true when one considers (1) other statements Thompson made during that same conference call; (2) subsequent statements by **_Red Hat_**'s representatives; and (3) analyst reaction to the announcement of the restatement.

During the 25 March 2003 conference call, in addition to the statement quoted above, Thompson said:

> . "[A]pproximately 4,000 subscriptions of the Advanced Server subscriptions sold in Q4 will be deployed late in calendar 2003, and therefore, we will not begin to recognize revenue on these subscriptions until such time as the technology is deployed." (Mugmon Aff. (DE # 167), Ex. D at 3.)

> . "The way our revenue recognition model works is we won't start recognizing revenue until the customer actually needs those technologies." (Id. at 10.)

> . "They'll [i.e., 4,000 units that were not in deferred revenue] come into deferred revenues when contractually we're able to bill, so the billings are based on when the customers deploy . . . ." (Id. at 13 n.)

During a 18 September 2003 conference call, Thompson stated:

---

For the reasons discussed *infra* with regard to defendants' attempted rebuttal of the fraud-on-the-market presumption, the [**27] court cannot resolve this issue at this time.

[12]

> [Statement of Position ("SOP")] 97-2 deals with software revenue recognition. The Accounting Standards Executive Committee (AcSEC) of the American Institute of Certified Public Accountants (AICPA) issues SOPs that govern accounting methods for various types of businesses and financial concerns. The relevant part of SOP 97-2 states, "[i]f an arrangement to deliver software or a software system does not require significant production, modification or customization of software, revenue should be recognized when all the following criteria are met: persuasive evidence of an agreement exists; delivery has occurred; the vendor's fee is fixed or determinable; collectibility is probability [sic]."

In re Ravisent Techs., Inc. No. Civ.A.00-CV-1014, 2004 U.S. Dist. LEXIS 13255, 2004 WL 1563024, *1 n.3 (E.D. Pa. July 13, 2004). (See also Mugmon Aff. (DE # 167), Ex. B.)

261 F.R.D. 83, *92; 2009 U.S. Dist. LEXIS 93493, **30

[W]e generally don't begin to recognize revenues from the sale of subscriptions to  [**31] *Red Hat* Enterprise Linux until our technology is being deployed by our customers. This means that in many cases there will be a period of time between the purchase of the subscription by the customer and the date that we begin revenue recognition. This period of time is generally less than 90 days. Third, our revenue recognition practice is that we recognize revenues from the sale of subscriptions to **Red Hat** Enterprise Linux, **Red Hat** Enterprise Network, and **Red Hat** Enterprise Applications, [ratably] over the period of the subscription, which is generally one year.

Q2 2004 **Red Hat**, Inc. Earnings Conference Call-- Final FD (Fair Disclosure) Wire (Sept. 18, 2003).

 [*93]   Then, on 17 June 2004, in an interview with *Bloomberg News,* CEO Szulik stated:

You know it's interesting, we don't recognize revenue the way a traditional software company does. It's recognized as 100 percent of the revenues when the product is sold, so technically, we have 20 days per month to recognize that revenue, so if a, you know, a product or business is sold, on the 28th or the 29th of the month, we only have one or two days of which to recognize the revenue for that sale, so in this current quarter-- I'm sorry, the Q1 quarter  [**32] that we just completed, there were one or two contracts that came in that had an impact that only gave us two or three days of revenue recognition but the good news of that of course, is that that sale will show up in deferred revenue, which is-- which grew 21 percent quarter-over-quarter, so it catches up to us in the second quarter.

(Consol. Am. Compl. P 184; see also Ans. P 184.)

Taking all these statements together, up until the date of the public announcement of the restatement, 13 July 2004, it was not unreasonable to conclude that **Red Hat** was recognizing subscription revenue from software sales when the customer deployed the software, doing so ratably and not prior to the time the revenue was received. In fact, after **Red Hat** announced the restatement and the reason behind it, one analyst reacted, "The prior method was aggressive, and *was not our understanding of [***Red Hat***'s]* implementation of ratable recognition as described in its

10K. We find it hard to understand how this was never picked up by internal controls or by auditors." [13] Michele Laverty, Credit Suisse First Boston, "Buy on Overreaction to Accounting Change," July 13, 2004 (quoted in Feinstein Report (DE # 175), at  [**33] 44 (emphasis added).) Because the "truth" was not fully disclosed on 25 March 2003, Gilbert satisfies the final element of the fraud-on-the-market presumption; he traded shares between the time the misrepresentations were made and the time the truth was ultimately revealed, i.e., during the class period.

Defendants' other argument against application of the presumption concerns loss causation. To satisfy this element of a § 10(b) claim,

["]the plaintiff [must] show that the defendant's conduct was a substantial cause of its injury." That is, "as long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement." The facts alleged in the complaint therefore need not conclusively show  [**34] that the **securities**' decline in value is attributable solely to the alleged fraud rather than to other intervening factors.

*In re Mutual Funds, 566 F.3d at 128* (citations omitted).

Defendant asserts that Gilbert must prove loss causation for the fraud-on-the-market presumption to apply. Defendants rely primarily on the Fifth Circuit's decision in *Oscar Private Equity Invests. v. Allegiance Telecom, Inc., 487 F.3d 261 (5th Cir. 2007).* In Oscar, **HN11** the court determined a plaintiff must show loss causation, by a preponderance of the evidence, at the **class certification** stage to trigger the presumption. *487 F.3d at 265, 269*; see also *Alaska Elec. Pension Fund v. Flowserve Corp., 572 F.3d 221 (5th Cir. 2009).* Most courts outside of the Fifth Circuit have rejected this decision. See, e.g., *In re Boston Scientific, 604 F. Supp. 2d at 286-87*; *Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 185-86 (S.D.N.Y. 2008)*; *In re The Mills Corp. Sec. Lit., 257 F.R.D. 101, 2009 WL 1032792, *6-7 (E.D. Va. 2009)* (collecting cases); *Schleicher v. Wendt, No. 1:02-cv-1332-DFH-TAB, 2009 U.S. Dist. LEXIS 24810, 2009 WL 761157, *12 (S.D. Ind. March 20. 2009)*. This court joins those courts and declines to add another element to the plaintiff's  [**35] burden of establishing the fraud-on-the-market presumption. Because Gilbert has shown that defendants made public, material misrepresentations;  [*94]  that **Red**

---

[13]   Although the analyst did go on to say, "Nevertheless, the amounts involved are immaterial at the revenue level and only sufficiently material at the bottom line to require restatement given the company's transition to break even in prior periods." Michele Laverty, Credit Suisse First Boston, "Buy on overreaction to accounting change," July 13, 2004 (quoted in Feinstein Report (DE # 175), at 44.)

261 F.R.D. 83, *94; 2009 U.S. Dist. LEXIS 93493, **35

_Hat_ stock traded on an efficient market; and that he traded shares between the time the misstatements were made and the disclosure of the truth, the class is entitled to invoke the fraud-on-the-market presumption.

Further, the court declines to resolve whether defendants have rebutted the presumption (to the extent defendants' argument could be deemed an attempted rebuttal). There is no doubt the fraud-on-the-market presumption is subject to rebuttal. _Basic, 485 U.S. 248, 250_; see also _Gariety, 368 F.3d at 363_. In Basic, referring to the lower court's decision, the Court states,

> [t]he court acknowledged that petitioners may rebut proof of the elements giving rise to the presumption, or show that the misrepresentation in fact did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false.

> Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, [**36] will be sufficient to rebut the presumption of reliance.

_Basic, 485 U.S. at 248_ (citation omitted).

In this case, the issue simply cannot be resolved at this stage, despite the fact that the court is required to undertake a "rigorous" analysis for purposes of **_class certification_**. Both sides rely on experts to support their respective arguments on whether **_Red Hat_**'s misrepresentations and subsequent disclosures (or revelation of the fraud, in Gilbert's words) caused the stock price declines. In turn, as the cross-motions to exclude those experts evidence, each party invokes Daubert to suggest that the court cannot consider the opposing expert's opinion. The difficulty with engaging in a Daubert analysis now is that limited merits discovery has been undertaken. And, the basis of defendants' argument for the exclusion of the class expert is not the methodology he used, but rather that he relies on inadmissible speculation and his opinions thus lack an evidentiary basis. The grounds for the class expert's opinions are necessarily limited because of the lack of merits discovery. Furthermore, the presumption of reliance and any rebuttal can be resolved by

class-wide proof. In other words, the [**37] presumption can be proven, and rebutted, commonly; individualized proof is not necessary. [14] The court finds that common questions of liability predominate, and _Rule 23(b)(3)_ is therefore satisfied. See _In re Boston Scientific, 604 F. Supp. 2d at 286-87_ (finding predominance requirement met where lead plaintiff had adequately shown applicability of the fraud-on-the-market presumption and where issues raised by the defendants about loss causation were susceptible to common proof).

### III. DOCUMENTS FILED UNDER SEAL

Since the filing of the **_class certification_** motion, a [**38] number of documents have been filed under seal. It is not evident to the court the justification for filing all the documents under seal. For example, on 4 August 2008, Gilbert filed his entire reply brief and expert report under seal. The court recognizes that by order filed 15 November 2006, Magistrate Judge David Daniel held that the parties may deem certain information confidential and provided for the filing under seal of documents containing confidential information. However, this order cannot be deemed to permit the wholesale filing of documents under seal. The parties are directed to review the docket in this case via CM/ECF for entries indicating documents filed under seal. If any party desires any document(s) to remain filed under seal, such party shall file a motion to seal within 20 days of the date of this order, with such motion specifying the [*95] document(s), the reasons in support, and legal authority. If a motion to seal is not filed within that time as to a particular document, the Clerk is DIRECTED to unseal said document(s). In the future should any party wish to file a document under seal, the party must file a motion to seal in accordance with Local Civil Rule 79.2.

### IV. [**39] CONCLUSION

For the foregoing reasons, Gilbert's motion for **_class certification_** is ALLOWED. The cross-motions to exclude expert reports are DENIED WITHOUT PREJUDICE. It is ORDERED that:

1. This action is hereby certified as a class action under _Fed. R. Civ. P. 23(b)(3)_.

---

[14]   The court does not mean to suggest that a Daubert analysis can never be undertaken at the **_class certification_** stage and/or when merits discovery has not occurred. Under other facts and circumstances, such an analysis may be warranted. See, e.g., Rhodes v. E.I. DuPont de Nemours & Co., No. 6:06-cv-00530, 2008 U.S. Dist. LEXIS 46159, 2008 WL 2400944, *10-12 (S.D.W. Va. June 11, 2008) (in toxic tort case, court determined Daubert inquiry was necessary in conjunction with **_class certification_** determination because the plaintiffs relied on expert opinions to show the elements of their medical monitoring claim could be proven on a common, class-wide basis).

261 F.R.D. 83, *95; 2009 U.S. Dist. LEXIS 93493, **39

2. The certified class is defined as all purchasers of the common stock of **_Red Hat_**, Inc. between December 17, 2002 and July 12, 2004, inclusive and who were damaged thereby, but excluding **_Red Hat_**, Inc., Matthew J. Szulik, and Kevin B. Thompson, any entity in which any excluded person has or had a controlling interest, the officers and directors of **_Red Hat_**, Inc. and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

3. The class claims are for violations of _15 U.S.C. § 78j(b)_ and _17 C.F.R. § 240.10b-5_ against **_Red Hat_**, Inc., Matthew J. Szulik, and Kevin B. Thompson and for violation of _15 U.S.C. § 78t(a)_ against Matthew J. Szulik and Kevin B. Thompson.

4. Charles Gilbert is appointed class representative.

5. Coughlin Stoia Geller Rudman & Robbins LLP is appointed class counsel.

6. Within 30 days of the date of this order, the parties [**40] are directed to confer about a proposed schedule for merits discovery and the filing of dispositive motions and file a proposed scheduling order regarding the same.

7. Within 30 days of the date of this order, Gilbert shall file a memorandum regarding the provision of notice to the class in accordance with _Fed. R. Civ. P. 23(c)(2)(B)_.

This 28 August 2009.

/s/ W. Earl Britt

W. Earl Britt

Senior U.S. District Judge

**[*96]**  [SEE INVESTOR FAQS IN ORIGINAL]

**[*97]**  [SEE INVESTOR FAQS IN ORIGINAL]

**[*98]**  [SEE ANALYST COVERAGE IN ORIGINAL]