# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

In Re: INTERCLOUD SYSTEMS, INC.
    SECURITIES LITIGATION

This Document Relates To:
ALL Actions

**Master Docket No:**
**3:14-cv-01982-PGS-DEA**

**<u>CLASS ACTION</u>**

---

## DEFENDANTS INTERCLOUD SYSTEMS, INC.'S AND
## MARK E. MUNRO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR
## <u>OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Geoffrey S. Berman
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
Tel: (973) 360-7900
bermang@gtlaw.com

-and-

Toby S. Soli (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY
Tel:  (212) 801-9200
solit@gtlaw.com

*Attorneys for Defendants*
*InterCloud Systems, Inc.*
*and Mark Munro*

0

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................. 3

    I.     The Parties and Relevant Non-Parties ................................................ 3

    II.    Background ......................................................................................... 4

ARGUMENT ................................................................................................. 5

    I.     Legal Standard .................................................................................. 5

    II.    Plaintiff Fails to Prove the Class Is Entitled To A
          Presumption Of Reliance ................................................................... 6

          A.    Plaintiff Fails to Demonstrate An Efficient Market
                For InterCloud Securities ....................................................... 7

          B.    Plaintiff Is Not Entitled To A Presumption Of Reliance
                Under *Affiliated Ute* ............................................................. 14

    III.    The Proposed Class Representative Is Atypical Because He Is
           Subject to Unique Defenses ............................................................... 16

    IV.    If A Class Is Certified, The Class Period Should End No Later
           Than March 17, 2014,When An Article Disclosed That Meyer
           Was Paid for His *Seekingalpha.Com* Articles ................................... 19

CONCLUSION .............................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972) ....................................................................2, 8, 15, 17

*Agostino v. Quest Diagnostics, Inc.*,
   256 F.R.D. 437 (D.N.J. 2009) .................................................................6

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ...........................................................................9

*Applestein v. Medivation Inc.*,
   No. C 10-00998 MHP, 2010 WL 3749406 (N.D.Cal. Sept. 20, 2010) .....................18, 19, 20

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ...............................................................................8

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989)..............................................................9

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011) ....................................................................9

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ...............................................................................6

*George v. China Automotive Sys., Inc.*,
   No. 11 Civ. 7533(KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013)................7, 8

*Glenn v. Hayman*,
   No. Civ. A. 07-112 (PGS), 2007 WL 432974 (D.N.J. 2007) ...........................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S.Ct. 2398 (2014) ............................................................................8

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) .................................................................6, 7

*Johnson v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001) ..............................................................6, 7, 17

*In re PolyMedica Corp. Sec. Litig.*,
   453 F.Supp.2d 260 (D.Mass. 2006)........................................................10

*Reinschmidt v. Zillow, Inc.*,
   No. C12-2084-RSM, 2013 WL 1092129 (W.D.Wash. Mar. 14, 2013) ...........18, 19

*Tsirekidze v. SyntaxBrillian Corp.*,
   Case No. C07–2204–PHX–FJM, 2008 WL 942273 (D.Ariz. April 7, 2008) .................18, 19

*In re Xcelera.com Secs. Litig.*,
   430 F.3d 503 (1st Cir. 2005)...................................................................10

**Other Authorities**

FED. R. CIV. P. 23(a) ................................................................................................ 7

FED. R. CIV. P. 23(a)(3) ........................................................................................ 17

FED. R. CIV. P. 23(b)(3) .......................................................................................... 7

Defendants InterCloud Systems, Inc. ("InterCloud") and Mark Munro ("Munro") (collectively, with InterCloud, the "InterCloud Defendants") submit this memorandum of law in support of their opposition to Lead Plaintiff Charles R. Gilbert, Jr.'s ("Gilbert" or "Plaintiff") motion for class certification (the "Motion").

## PRELIMINARY STATEMENT

This Court should deny Plaintiff's Motion for two reasons. First, individual issues will predominate over common issues because the proposed investor class is not entitled to a presumption of reliance under either (i) the fraud-on-the-market doctrine, or (ii) *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). To take advantage of the fraud-on-the-market presumption to establish class-wide reliance, Plaintiff must demonstrate, among other things, an efficient market for InterCloud securities. Plaintiff has utterly failed to do so. He has not identified *any* securities analysts that followed and reported on the stock during the proposed class period. Nor has he offered an event study to demonstrate the change in InterCloud's stock price following the publication of the articles at issue was materially different from the changes in InterCloud's stock price on other days during the proposed class period when there was no news. Simply alleging the stock price moved following the publication of an article without comparing that price change to price changes on other days during the proposed class period (and with the performance of the market generally and stock price movement among

InterCloud's peers) is clearly insufficient to satisfy Plaintiff's burden to demonstrate that the price changes were caused by the alleged misleading articles or the supposed corrective disclosures. ***While an event study may not be necessary in every securities case to demonstrate an efficient market, it certainly is necessary where, as here, InterCloud's stock price fluctuated wildly on a fairly routine basis during the proposed class period on news days and non-news days.*** Moreover, Plaintiff cannot rely upon *Affiliated Ute* to create a presumption of reliance because this case is primarily an affirmative misrepresentation case and not an omissions case. Without a presumption of class-wide reliance, individual issues will predominate and, accordingly, a class should not be certified.

Second, Gilbert is subject to unique defenses and therefore his claims are not typical of the proposed class. Gilbert routinely bought and sold InterCloud stock ***multiple times on the same day***. His trading activity demonstrates he did not rely upon financial information about InterCloud, but instead relied upon market volatility. As a result, he is not qualified to be a class representative.

Finally, if a class were to be certified (it should not), the class period should end no later than March 17, 2014, when the alleged "truth" was fully revealed. The class period should not extend beyond this date.

# STATEMENT OF FACTS

## I.     The Parties and Relevant Non-Parties

Gilbert purports to represent investors who purchased the common stock of InterCloud between December 3, 2013, and March 27, 2014 (the "Proposed Class Period").  (Second Amended Complaint ("SAC"), ¶ 2.)

Defendant InterCloud is a global single-source provider of value-added services for both corporate enterprises and service providers, offering cloud and managed services, professional consulting services and voice, data and optical solutions to assist its customers in meeting their changing technology demands. (*Id*. ¶ 2.)  Defendant Munro is InterCloud's Chief Executive Officer and Chairman of the Board.  (*Id*. ¶ 2.)

Non-party CSIR Group LLC ("CSIR") is a Manhattan-based investor relations firm.  (*Id*. ¶ 20.)  The SAC alleges that CSIR hired freelance writers – the "Authors" – to prepare and publish articles touting InterCloud stock, which were reviewed, edited, approved, and ratified by InterCloud management, including Munro, with CSIR acting as the intermediary between InterCloud and the writers. (*Id*. ¶¶ 20-21.)  The articles are not alleged to contain any misrepresentations or omissions concerning InterCloud.  However, the Authors are alleged to have made false and misleading disclosures concerning their independence and to have failed to disclose their receipt of payment for those articles.  (*Id*. ¶¶ 48, 67, 88, 98.)

3

## II.    Background

InterCloud was first listed for trading on NASDAQ on October 31, 2013, only one month before the beginning of the proposed class period.  (*Id.* ¶ 3.) During that short period, InterCloud's stock price fluctuated wildly, trading as low as $2.20 on November 13, 2013, as high as $16.69 on November 18, 2013, and closing at $7.79 the day before the proposed class period.  (*See* Declaration of Toby S. Soli, dated August 2, 2016 ("Soli Decl."), Exs. A and B.)

Plaintiff alleges that no later than December of 2013, at InterCloud's direction, CSIR commenced a campaign to publicly tout InterCloud's stock in order to artificially inflate InterCloud's share price.  (*Id.* ¶ 20.)  Plaintiff alleges that CSIR commissioned numerous articles published on third-party investor websites, which caused the price of InterCloud's stock to rise during the class period.  (*Id.* ¶ 33.)  Plaintiff identifies three articles published on the website, *seekingalpha.com* on December 3, 2013 ("December 3 Article"), January 13, 2014 ("January 13 Article"), and February 18, 2014 ("February 18 Article"), and one published one *wallstreetcheat.com* on December 17, 2013, ("December 17 Article," collectively, the "Articles").  (*Id.* ¶¶ 35, 40, 68, 89.)

***Plaintiff does not allege that the Articles contained false or misleading information, or omitted material information, about InterCloud's business, value, financial performance, products, sales, or growth***.  Instead, Plaintiff

4

alleges that InterCloud's stock price was artificially inflated because the market did not understand that the Authors were paid for the Articles, and the alleged artificial inflation was eliminated when the "truth" about the Articles having been paid for was revealed in a series of "curative" articles in March of 2014.

## ARGUMENT

## I.   Legal Standard

"A party seeking class certification bears the burden of proving that the proposed class action satisfies the requirements of Federal Rule of Civil Procedure 23." *Glenn v. Hayman*, No. Civ. A. 07-112 (PGS), 2007 WL 432974 at *2 (D.N.J. 2007) (citing *Johnson v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183-84 (3d Cir. 2001)).  The Third Circuit has held that "[c]lass certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Certification must be based on a "thorough examination of the factual and legal allegations," and requires a court to make "whatever factual and legal inquiries are necessary" after considering all relevant evidence and arguments presented by the parties. *Hydrogen Peroxide*, 552 F.3d at 307.  The Court should "make its own independent findings and need not afford plaintiff's claims any deference." *Agostino v. Quest Diagnostics*, Inc., 256 F.R.D. 437, 449 (D.N.J. 2009); *see also*

*Hydrogen Peroxide*, 552 F.3d at 318 n.18.  The factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence.  *Hydrogen Peroxide*, 552 F.3d at 320.

To be certified as a class, Plaintiff has the burden to satisfy each of the requirements of Fed. R. Civ. P. 23(a), namely that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  In addition, Plaintiff must satisfy each of the requirements of Fed. R. Civ. P. 23(b) (3), namely that " the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

## II.   **Plaintiff Fails To Prove The Class Is Entitled To A Presumption Of Reliance.**

To satisfy the requirement in Fed. R. Civ. P. 23(b)(3) that common issues predominate, Plaintiff must demonstrate that the proposed class is entitled to a presumption of reliance.  *See Johnson v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183-84 (3d Cir. 2001); *George v. China Automotive Sys., Inc.*, No. 11 Civ. 7533(KBF), 2013 WL 3357170 at *9 (S.D.N.Y. July 3, 2013) ("In the absence of such a presumption, reliance must be proven on an individualized basis…defeating

predominance.")  Plaintiff alleges he is entitled to a presumption of reliance under both the fraud-on-the-market doctrine, and *Affiliated Ute Citizens of Utah v. United States*, 406 US. 128 (1972).  Neither is applicable.

### A.    Plaintiff Fails To Demonstrate An Efficient Market For InterCloud Securities.

Plaintiff attempts to invoke the fraud-on-the-market theory set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988).  (Motion at 21-22.)  As Plaintiff states in his Motion, in order to be entitled to the presumption of reliance, Plaintiff must show that, *inter alia*, the stock traded in an efficient market.  (Motion at 22, citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("[w]ithout proof of [market efficiency], the fraud-on-the-market theory underlying the presumption completely collapses, rendering class certification inappropriate")).  "In seeking class certification, plaintiffs relying on the fraud-on-the-market theory to establish reliance bear the burden of proving market efficiency by a preponderance of the evidence.  To defeat the presumption of reliance, defendants do not, therefore, have to show an inefficient market.  They must, however, demonstrate that plaintiffs' proffered proof of market efficiency falls short of the mark."  *George v. China Automotive Sys., Inc.*, No. 11 Civ. 7533(KBF), 2013 WL 3357170 at  *9 (S.D.N.Y. July 3, 2013) (class certification denied where parties submitted expert reports and court determined defendant's

expert provided sound testimony that plaintiffs' expert's methodology was deficient).  Plaintiff's proffered proof falls well short of the mark.

In determining whether a plaintiff has adequately demonstrated an efficient market, courts are guided by *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989). The factors in *Cammer* are: (1) the stock's average trading volume; (2) the number of securities analysts that followed and reported on the stock; (3) the presence of market makers and arbitrageurs; (4) the company's eligibility to file a Form S–3 Registration Statement; and (5) a cause-and-effect relationship, over time, between unexpected corporate events or financial releases and an immediate response in stock price.  *Cammer*, 711 F. Supp. at 1268-69.

In addition to providing absolutely no evidence whatsoever on the second *Cammer* factor—analyst coverage—Plaintiff has failed to demonstrate the "cause-and-effect relationship" that is "the most important factor in an efficiency analysis."  *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011) ("DVI II") (holding that "because an efficient market is one in which information important to reasonable investors . . . is immediately incorporated into stock prices, . . . the cause-and-effect relationship between a company's material disclosures and the security price is normally ***the most important factor in an efficiency analysis***" (emphasis added), *abrogated in part by*, *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013); *see Cammer*, 711 F. Supp. at 1287 ("empirical

facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price . . . is the essence of an efficient market and the foundation for the fraud on the market theory….”); *In re PolyMedica Corp. Sec. Litig.*, 453 F.Supp.2d 260, 266 (D. Mass. 2006) (“The fifth factor (cause-and-effect relationship) is ‘in many ways, the most important….’”) (quoting *In re Xcelera.com Secs. Litig.*, 430 F.3d 503, 512 (1st Cir. 2005)).   In an efficient market, “stock price must quickly and fully reflect the release of public information such that ordinary investors cannot profitably trade on the basis of it, [it] requires that the reaction to news be fully completed on the same trading day as its release—and perhaps even within hours or minutes.”  *In re PolyMedica Corp. Sec. Litig.*, 453 F.Supp.2d at 278.

Plaintiff argues that he has met the fifth and most important element based ***only*** on the allegation that InterCloud’s stock price increased after the publication of each of the Articles (in fact there was no material or statistically significant price increase after publication of three of the four articles) and dropped when articles about the alleged “truth” regarding InterCloud’s alleged involvement with the Articles were made public.  (Motion at 24-25.)  However, Plaintiff failed to demonstrate, or even attempt to demonstrate, that the changes in InterCloud’s stock price following the publication of the Articles were statistically significant as

compared to the changes in InterCloud's stock price on other non-news days (or as compared to the market and stock price changes of InterCloud's peers).

To demonstrate the "cause and effect relationship" between unexpected corporate events and an immediate response in the company's stock price, plaintiffs ordinarily submit an "event study" to demonstrate that the stock price change following an alleged misrepresentation and the corrective news is statistically significant.  An event study in this case would analyze InterCloud's stock price movement on each day during the short four month class period to compare the stock price change following each of the Articles to stock price changes on other news days and non-news days.  While an event study may not be required in all securities cases, in a case such as this, where InterCloud's stock price fluctuated wildly on various days before and during the class period, the "cause and effect relationship" cannot be demonstrated without an events study, which Plaintiff failed to provide.  Indeed, those wild price fluctuations, which more often than not were on no news, strongly indicate an inefficient market:

- Shortly before the beginning of the proposed class period, InterCloud released its Third Quarter 2013 earnings report after the market closed on November 14, 2013.  (Soli Decl., Ex. C.)  The stock price closed at $2.55 on November 14, 2013, and opened the following morning at $4.65, an increase of $2.10, before going down to $4.41,

then up to $10.35, and finally closing at $9.46 on November 15. (Soli Decl., Ex. A.)  Then *with no additional news*, the stock opened at $14.30 the next business day (an increase of over 50%), rose as high as $16.69, fell as low as $12.39, and closed at $14.18.  (*Id.*) InterCloud's stock price did not "quickly and fully reflect the release" of the Third Quarter 2013 earnings report the first day of trading following the earnings release, suggesting an inefficient market.

- Over the next two weeks, InterCloud's stock price fell back to $7.20, a drop of nearly 50 percent.  (Soli Decl., Exs. A and B.)

- The first Article, written by Thomas Meyer under the pseudonym "Equity Options Guru," was published during trading on December 3, 2013.   InterCloud's stock price rose from $7.63 to $10.40 on December 3.  As this Court previously noted, "the plausibility of the fact that the market (composed of prudent investors) relied upon news articles and reports written by relatively unknown authors and analysts appears tenuous."  (ECF No. 85 at 2.)  That observation is borne out by the fact that the 33% price increase on December 3 followed a 29% stock price decline the previous week *on no material news* from $13.05 on to $9.25.  (Soli Decl., Ex. A.)

11

- The second Article was published after the market close on December 17, 2013.  InterCloud's stock opened the following day at $10.45, up 56 cents from the previous close.  (Soli Decl., Ex. A.) That move was not statistically significant in light of the stock's wild gyrations on other news and non-news days.

- Between December 24, 2013, and December 31, 2013, InterCloud's stock price rose *on no material news* from $10.50 to $18.36.  (*Id.*)

- The third Article was published just after the market opened on January 13, 2014.  InterCloud's stock opened at $15.26 and closed at $15.35, essentially no reaction, but the next day, *on no material news*, the stock price jumped up from $15.35 to $17.03 (January 14) and continued to increase on *no material news* to $18.13 the following day (January 15).  (*Id.*)

- The fourth Article was published during trading on February 18, 2014.  The stock had *no reaction*, opening at $14.28 and closing at $14.27.  (*Id.*)

- On March 13, 2014, the stock price dropped from $13.81 to $11.91 (13.8%), allegedly in response to a "curative" article, but a week earlier, on March 6, 2014, *on no material news,* the stock price

12

dropped from $15.52 to $14.00, and continued to drop to $13.10 (15.6%) on March 12, 2014, ***on no material news***. (*Id.*);

- On March 17, 2014, another "curative" article was published after the market close. The stock price closed at $11.87 on March 17 and opened on March 18 at $11.18, ***a negligible decrease***. (*Id.*);

- After trading hours on March 20, 2014, the Rosen Law Firm announced its investigation of InterCloud in connection with a paid promotional scheme – the same information that already had been disclosed in the previous "curative" articles, thus the decline in the stock price from a close of $10.33 to a close of $7.35 (*id.*) was a drop on ***no new news*** except that generated by the plaintiffs' bar threatening to file a class action.

- On March 27, 2014, allegedly in response to a "follow-up" article, the stock declined from an opening price of $7.41 to a closing price of $6.60 ($0.81). However, in the prior two days, the stock had declined similar amounts—on March 25, 2014 from $8.62 to $7.98 ($0.64) and on March 26, 2014 from $7.99 to $7.38 ($0.61) on ***no material adverse news***. (*Id.*)

Based upon this evidence that InterCloud's stock vacillated wildly before and during the class period without connection to news events, Plaintiff's reliance

solely upon InterCloud's stock price movement immediately following the publication of the four Articles and the four "curative" articles is woefully insufficient to prove the fifth "cause and effect relationship" element necessary to demonstrate InterCloud was traded in an efficient market. Thus, Plaintiff is not entitled to a presumption of reliance based upon the fraud-on-the-market doctrine.

### B.   Plaintiff Is Not Entitled To A Presumption Of Reliance Under *Affiliated Ute.*

Plaintiff also seeks to invoke the *Affiliated Ute* presumption of reliance, pursuant to which reliance can be presumed in an omissions case from the materiality of the information not disclosed. *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153-54 (1972). (*See* Motion at 27, "Defendants' statements during the Class Period omitted material information, specifically that the articles were promotional advertisements commissioned, controlled, and paid for by Defendants.") But, this is primarily a misrepresentations case.

The first three Articles were published on the website *seekingalpha.com*. Meyer authored the December 3 Article and the January 13 Article. Mylant authored the December 17 Article. Plaintiff affirmatively alleges that two of the Articles contain misrepresentations—Plaintiff alleges that, upon information and belief, Mylant and Meyer affirmatively misrepresented in their December 17 and January 13 Articles that they are "not receiving compensation for [the article] (other than from Seeking Alpha)." (ECF No. 60 at 24 (¶ 58), 31 (¶¶77).) These

14

allegations have to be based upon information and belief because the alleged misrepresentations are not contained in the text of the Articles, but instead must have been accessible by clicking on a separate link at the end of the Articles.  (*See* ECF Nos. 95-13, 95-14, and 95-15.)[1] These allegations alone demonstrate that this is primarily a misrepresentations case.

Moreover, although Plaintiff does not make the same allegation with regard to the December 3 Article, it was written by Meyer on the same *seekingalpha.com* website, which allegedly required the author to disclose the receipt of "advertising revenue or any other form of sponsorship fee from a company you write about." (*Id.* at 19 (¶45).)  The December 3 Article contains the same link as the other two Articles.  Therefore, there is no reason to believe that Meyer did not make the same representation for the December 3 Article that he made for the January 13 Article. Even if Meyer did not make the affirmative representation for the December 3 Article that he did not receive compensation except from *seekingalpha.com,* in light of the express statutory obligation in Section 17(b) of the Securities Act to disclose the receipt of compensation, the failure to make the disclosure is tantamount to an affirmative misrepresentation that he was not compensated for those articles.  Thus, this is primarily a misrepresentation, not an omissions, case.

---

[1]     The Reise Declaration attaches screen shots of the three articles published on *seekingalpha.com*. (Exs. 9, 10, 11.)  Although the screenshots show links to the Authors' disclosures and information, they are not functional so it is impossible to determine from these screenshots exactly what the Authors' disclosed, and the Articles are no longer available on the website.

The alleged false statements in the Articles cannot be "transformed into [omissions] simply because the defendants failed to disclose that the allegedly misleading fact[s were] untrue." *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 193 (3d Cir. 2001). "Under an approach of that nature nearly any misrepresentation could become an omission… [as] a misrepresentation is necessary to create the specific expectation that the omission does not negate." *Id*. The fact that the alleged fraudulent scheme here required some degree of concealment cannot transform it into an omissions case. It is primarily a false statements case and to find otherwise would permit the presumption in A*ffiliated Ute* to engulf the reliance requirement. *See id*.

Moreover, Plaintiff has failed to demonstrate that the misrepresentation concerning the Authors' receipt of compensation is material. Plaintiff argues he met the materiality requirement based upon the market's reaction to the "curative" articles. (Motion at 27.) However, as demonstrated above, Plaintiff fails to demonstrate the changes in InterCloud's stock price resulted from the Articles, and thus fail to demonstrate the materiality necessary to invoke *Affiliated Ute*.

## III. <u>The Proposed Class Representative Is Atypical Because He Is Subject To Unique Defenses.</u>

The proposed class representative, Gilbert, fails to fulfill Rule 23(a)(3) because he is atypical and subject to unique defenses. Gilbert alleges that "[i]n purchasing InterCloud stock during the Class Period, I considered its price and the

available public information about the company, and I anticipated that it would appreciate over time."  (ECF No. 95-3, ¶ 3.)  However, the frequency of Gilbert's trades of InterCloud stock, including numerous purchases and sales on the same day, demonstrates conduct akin to a day trader and his trading activity renders him atypical and subject to unique defenses.

Day traders are "atypical of the class because day traders rely upon daily market volatility, not" financial information about the company, in this case, InterCloud.  *Reinschmidt v. Zillow, Inc.*, No. C12-2084-RSM, 2013 WL 1092129 (W.D. Wash. Mar. 14, 2013) (finding proposed lead plaintiff atypical of the class because he often purchased and liquidated shares of the company at issue on the same day and requiring supplemental briefing to determine the proper lead plaintiff).  "Because trading on market volatility 'belies any true reliance on company reports or even on the integrity of the stock price itself,' such behavior may subject a class representative to a unique defense." *Id.* (quoting *Tsirekidze v. SyntaxBrillian Corp.*, Case No. C07–2204–PHX–FJM, 2008 WL 942273 at *4 (D.Ariz. April 7, 2008) (holding that principal member of an investor group had an unusually active trading history that rendered him subject to the "unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself.")); *Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 WL 3749406 at *3 (N.D. Cal. Sept. 20, 2010) (finding proposed lead

plaintiff inadequate where he engaged in 407 trades over a 644 day period, buying and selling stock on the same day on at least 9 occasions).

Here, Gilbert's trading activity both contradicts the allegations in his Declaration and suggests he did not rely upon financial information about InterCloud.  In November and December of 2013, Gilbert traded InterCloud stock on 15 different days, buying and selling InterCloud stock a total of 55 times.  (ECF No. 12-4, pp. 3-4, and No. 12-5.)  On 9 of those 15 days, ***Gilbert both bought and sold InterCloud stock on multiple times in the same day***.  *(Id.)*  In January of 2014, Gilbert traded 50,000 shares of InterCloud stock on one day, making three separate purchases of 10,000 and two separate sales of 10,000 on that same day. (ECF No. 12-5.)

In routinely buying and selling InterCloud stock multiple times in one day, it is evident Gilbert did not rely upon financial information about InterCloud, as he states in conclusory fashion in his Declaration.  Rather, Gilbert likely relied upon daily market volatility.  Further, in buying and selling InterCloud stock multiple times on the same day, it is evident that, contrary to his Declaration, Plaintiff ***did not*** "anticipate[] that [InterCloud stock] would appreciate over time."  (ECF No. 95-3, ¶ 3.)  As a result, Plaintiff is atypical, subject to unique defenses, and the Court should deny the Motion.  *See Reinschmidt*, 2013 WL 1092129 at *4; *Tsirekidze* , 2008 WL 942273 at *4; *Applestein*, 2010 WL 3749406 at *3.

18

IV.   **If A Class Is Certified, The Class Period Should End No Later Than March 17, 2014, When An Article Disclosed That Meyer Was Paid For His *Seekingalpha.Com* Articles**.

Plaintiff's case is premised upon the market being unaware that the Authors of the four Articles were compensated for the Articles by InterCloud's public relations firm, CSIR.  However, that fact was disclosed in an article written and published on March 17, 2014.  (ECF No. 60-1.)  In the article, the author cited the December and January Articles and stated: "Not disclosed was the fact that the authors unflinching support for InterCloud was also a function of being paid to promote the shares."  *Id*. at 98.  Thus, to the extent any artificial inflation was baked into the price of InterCloud stock based upon the market being unaware the Authors were paid for their articles, that inflation was eliminated no later than March 17, 2014, which should be the end of any certified class period.

## CONCLUSION

Plaintiff's motion for class certification should be denied because individual issues of reliance predominate over common questions of law and fact, and Gilbert's claims are not typical because he will be subject to unique defenses. Finally, if a class were to be certified, the class period should end on March 17, 2014, when the fact that the Authors of the Articles were compensated was disclosed to the market.

Dated:  August 2, 2016                           GREENBERG TRAURIG, LLP

                                                 By: /s/ Geoffrey S. Berman
                                                 500 Campus Drive, Suite 400
                                                 Florham Park, NJ  07932-0677
                                                 Telephone: (973) 360-7900
                                                 bermang@gtlaw.com

                                                 -and-

                                                 Toby S. Soli, *admitted pro hac vice*
                                                 200 Park Avenue
                                                 New York, NY 10166
                                                 Telephone:  (212) 801-9200
                                                 solit@gtlaw.com

                                                 *Attorneys for Defendants*
                                                 *InterCloud Systems, Inc.*
                                                 *and Mark Munro*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 2, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

   /s/ Geoffrey S. Berman_____
GEOFFREY S. BERMAN